[Nos. 35471, 35688.     *En Banc.*     February 16, 1961.]

JOSEPH E. GANDY et al., *Appellants,* v. THE STATE OF WASHINGTON, *Respondent.*

WASHINGTON ELKS MAJOR PROJECT, INC., *Appellant,* v. THE STATE OF WASHINGTON, *Respondent.*[1]

[1]Reported in 359 P. (2d) 302.

*Griffith Way* and *Kenneth A. Cox* (of *Little, Palmer, Scott & Slemmons*), for appellant.

*The Attorney General* and *James A. Furber, Assistant*, for respondent.

ROSELLINI, J.—In these consolidated cases the appellants Gandy *et al.* are in the business of leasing automobiles and trucks on long-term written leases; and the appellant Washington Elks Major Project, Inc., is one of their lessees. Prior to April 1, 1959, the appellants entered into a substantial number of leases extending beyond April 1, 1959, and possession of the vehicles was transferred to the lessee prior to that date.

These vehicles were purchased by the lessors for the purpose of leasing them, and a retail sales or compensating use tax was paid under the law in effect at that time. The lessors passed this tax on to the lessee by including it in the rental charges.

The 1959 legislature amended RCW 82.04.040 to include within the definition of "sale" as used in that chapter, the renting or leasing of tangible personal property, and thereby made the privileges of renting and leasing of such property subject to the sales tax. The lessors were required to collect this tax from their lessees and remit it to the state and are subject to personal liability if they fail to do so. Were it not for this fact, they would have no standing in court to complain of the imposition of the tax upon their lessees, who bear the primary burden of the tax.

In accordance with RCW 82.08.090[2], the tax commission

---

[2]"In the case of installment sales and leases of personal property, the commission, by regulation, may provide for the collection of taxes upon the installments of the purchase price, or amount of rental, as of the time the same fall due."

instructed all lessors to collect from their lessees and pay over to the commission the new retail-sales tax measured by the rentals received, including rentals received on leases entered into prior to the effective date of the amendment.

These actions followed the rejection of the lessors' petition for refund of the taxes remitted on rentals received under leases entered into prior to April 1, 1959. A stipulation of facts was signed by the parties, and after a hearing on motions for summary judgment, the court, finding no merit in the appellants' contention that the amendment was intended to apply only to leases entered into after its effective date, granted the motion of the respondent.

In attacking this holding, the appellants argue that, under the 1959 amendment to RCW 82.04.040, the legislature equated the renting and leasing of personal property to the effecting of a sale. The term sale, the act provides,

" . . . means any transfer of the ownership of, title to, or possession of property for a valuable consideration and includes any activity classified as a 'sale at retail' or 'retail sale' under RCW 82.04.050. It includes renting or leasing, conditional sale contracts, leases with option to purchase, and any contract under which possession of the property is given to the purchaser but title is retained by the vendor as security for the payment of the purchase price. . . . "

From this definition, the appellants argue, it is evident that the legislature intended the tax to attach at the inception of the sale; that in the case of the leases in question the tax would necessarily attach retroactively, and that this was not intended.

(It should be noted at this point that rentals which fell due before the effective date of the act have not been subjected to the tax.)

The appellants state their concept of the tax in these words:

"This is not a tax on the use of property under a lease, but is rather an excise tax on a transaction between two parties, the lessor and lessee. The transaction being taxed is the lessee's acquisition of the property."

It is true that, as we said in *White v. State*, 49 Wn. (2d)

716, 306 P. (2d) 230, the tax is imposed upon the transaction, according to the language used in RCW 82.08.020:

"There is levied and there shall be collected a tax on each retail sale in this state . . ."

The question before the court in this case is: did the legislature intend that the leasing of property should be treated as a single sale or as a series of sales?

■ According to the usual definition, a lease is a contract whereby one party gives to another the right to the use and possession of property for a specified time and, ordinarily, for fixed payments. The right to continued possession under a lease is conditioned upon the payment of rentals and performance of other covenants. Such a contract is not executed until the term expires and all of the conditions are fulfilled. The term may expire at the end of the stated term or it may be terminated sooner by lawful eviction. *Shepard v. Sullivan,* 94 Wash. 134, 162 Pac. 34.

Unfortunately the legislature did not make clear whether it intended the tax to attach at the time of the execution of the lease, or (as the appellants contend) at the time of taking possession under the lease, or as the payments fall due.

The appellants do not seriously question the power of the legislature to make the tax applicable to leases in existence at its effective date, but simply argue that it was not the legislative intent to do so. It is their argument that the initial transfer of possession under the lease is the taxable event, and the only taxable event, according to the legislative definition of "sale."

They cite no authority so interpreting an act such as ours.

■ RCW 82.08.020 makes the tax payable on the selling price. A sale under RCW 82.04.040 is a transfer "for a valuable consideration." The requirement of a valuable consideration is at least as important as the transfer. The original transfer of possession under a lease is a transfer for a consideration, but that consideration is not the rent reserved. There may be a token sum recited, but ordinarily the consideration consists of the lessee's covenants. The appellants

do not contend that the legislature intended to impose a tax on these promises or that the tax attaches when the lease is executed.

If the act of taking possession fixed the obligation of the lessee to make all of his rental payments, it would be difficult to dispute the appellants' contention. But this is not the case. The lessee's obligation depends upon his continued enjoyment of the right to possession, and this right may be terminated prior to the expiration of the term through no fault of the lessee.

■ Each rental payment relates to a period of possession. It is this possession for which the lessee contracts and for which the periodic consideration is given. A lease if viewed in this light is not a single transaction (or sale), but a contract for a series of transactions—the exchange of rental payments for continued enjoyment of possession.

Of the cases cited in the briefs, *Broadacre Dairies v. Evans*, 193 Tenn. 441, 246 S. W. (2d) 78, is most nearly in point. That was a suit by a taxpayer to recover taxes paid under protest on machinery which it had leased outside the state, prior to the effective date of the taxing statute. The tax commissioner had levied an excise tax on the rental payments paid after the effective date of the act. The taxpayer took the position that, since its lease contract had been entered into prior to the effective date of the act, it owed no tax; precisely the position taken by the appellants in this action. The statute in that case (Tenn. Code § 1328.24 (d)) differed from ours in that it expressly provided that the monthly or other rentals were to be taxed at the rate of two per cent, whereas our statute simply imposes the tax on "renting or leasing."

In disposing of the taxpayer's contention, the Tennessee court observed that, since the rent was payable monthly and the lease was not terminable on a date certain (characteristics which are also found in the leases involved in this action), it could be inferred that each payment by the taxpayer represented current consideration.

Having determined that the privilege upon which the contested tax had been imposed was not the initial trans-

action (although that transaction was no doubt subject to the state use tax), but rather the privilege exercised by the taxpayer in renting or leasing as a lessee, the court held that the portion of the lease which was performed after the effective date of the statute was subject to the tax.

As the court in that case observed further, legislatures which provide for sales and use taxes do so with the intent that all persons similarly situated should be treated as uniformly as possible. The use tax is designed to avoid an unfair advantage to those who acquire property outside the state and bring it into the state for use in competition with others who make their purchases here. The sales tax upon renting and leasing was undoubtedly designed to avoid another possible loophole.

█ If the tax were held applicable only to leases entered into after the effective date of the act, an advantage would accrue to persons who leased property within the state prior to the effective date of the act, for, under the provisions of RCW 82.12.010, .020, imposing the use tax, leased property is subject to the tax when the first act of dominion or control is exercised over it within the state, regardless of when the lease was entered into. One leasing property outside the state prior to April 1, 1959, and bringing it into the state on that date, would be subject to the compensating use tax, whereas the appellant lessees would be exempted from the sales tax by virtue of the simple fact that their leases were entered into within the state. Such an obvious inequity could not have been intended.

There would be a further lack of uniformity in the taxing of existing leases which were executed within the state in that the privilege of leasing would be subject to the tax or free from it, depending upon nothing more than the date on which the lessees took possession; and many lessees would be given an unfair advantage over their competitors for this reason.

In addition, if the appellants' interpretation is correct, it must follow that on the day the taxpayer takes possession, he becomes liable for the tax on all of the rentals which may become due under the lease, even though the lease

is subject to termination prior to the expiration of its term and the rentals may never become due. Likewise, a lessee bringing leased property into the state would be immediately liable for the tax on the balance of the rent reserved under the terms of the lease, even though he might use the property within this state for only a portion of the term and then remove it to another state for the remainder, and there be subject to another tax.

On the other hand, if the act is read as applicable to all existing leases and rentals, regardless of the date of their initiation, and applicable only to rentals which actually become due, all lessees of personal property are treated alike and no lessee is required to pay a sales tax on rentals which may never fall due, or to pay a use tax based on rentals which may accrue outside the state.

This view is in accord with the tax commission's interpretation of tax provisions relating to leases with option to purchase, contained in RCW 82.08.090. The commission has consistently and uniformly required lessors who lease tangible personal property with an option to purchase the same, to collect from their lessees the retail sales tax measured by the rentals as of the time the payments fall due. It has also applied rate changes to rental payments which fall due after the effective date of the change where the leases were entered into prior to the effective date of the change. This interpretation has not been repudiated by the legislature.

It is true that a similar tax imposed by the 1939 legislature was construed by the tax commission as inapplicable to leases entered into prior to the effective date of the act. However, this provision of the act was repealed at the next session of the legislature, and the administrative interpretation of it is not given weight by legislative acquiescence.

It is evident from a reading of the statute as a whole that the legislature intended to levy the sales tax and the use tax as uniformly as possible so that all persons similarly situated would be treated as much alike as possible. Considering the inequities which would result if the appellants'

interpretation were adopted, and the greater justice and uniformity of taxation achieved under the respondent's interpretation, we conclude that the 1959 amendment (which brought the renting and leasing of tangible personal property within the definition of the word "sale" as used in the act) was intended to apply prospectively to leases in effect on the date the amendment became law; that the tax was intended to attach as the rentals become due; and that the taxing of rentals paid to the appellants under their leases was done according to the legislative mandate.

Throughout their brief, the lessors refer to the taxing of their purchases of the vehicles involved and the taxing of the rentals paid by their lessees as "double taxation." Apparently they derive this assumption from the fact that they have passed on to their lessees the cost of the tax which they paid in purchasing the vehicles. This does not make the tax imposed upon the lessees by the state a double tax. The lessors have been subjected to only one tax, and their lessees have likewise been required to pay only one tax. Their payments of the lessors' tax was not in response to any requirement of the respondent.

It is urged that, because the 1959 act relieved the lessor of the retail-sales tax on his future purchases of vehicles for leasing and imposed the tax on the lessee, it was the legislative intent that the lessee should not be taxed on vehicles on which the lessor had paid a tax prior to the amendment. If this were the case, leases entered into after April 1, 1959, would not be subject to the tax if the lessor previously had paid a sales or compensating tax on the property. In the act, we do not find an intent to create such an exemption. Under RCW 82.12.030 (2), respecting the compensating use tax, a bailee or donee is relieved of the obligation to pay the use tax if his bailor or donor has already paid a sales or use tax. No such exemption is provided where the property was acquired through sale or lease. In order to render the statute consistent, we can only construe it as requiring the lessee to pay the sales tax likewise, even though his lessor has paid a similar tax.

In *Klickitat County v. Jenner*, 15 Wn. (2d) 373, 130 P. (2d) 880, a comparable change in the taxing statutes lifted the burden of the sales tax from contractors who purchased materials for installation in buildings which they constructed and placed it upon the owners. This court held that the owners were liable for the tax on the improvements made subsequent to the effective date of the act, even though their contractors had evidently paid a sales tax when they acquired the materials, where the materials were purchased by them prior to that date.

That case also answers the contention of the appellants that the act is retroactive in effect. In concluding the opinion, this court said:

"Nor is the 1941 amendment of the revenue act retroactive in its operation. By its express terms, it became effective on May 1, 1941. Respondents seek to impose a sales tax on only those portions of the building contracts performed *after* the effective date of the act. In other words, respondents propose to tax only improvements to real property made subsequent to May 1, 1941, and we think, under the circumstances, it is immaterial that the contracts for the improvements were entered into prior to that date."

The judgment is affirmed.

FINLEY, C. J., MALLERY, DONWORTH, WEAVER, and HUNTER, JJ., concur.

OTT, J. (dissenting)—The legislature, by Laws of 1959, Ex. Ses., chapter 5, § 1, p. 1664, amended Laws of 1955, chapter 389, § 5, p. 1645, as amended by Laws of 1959, Ex. Ses., chapter 3, § 1, p. 1644 (RCW 82.04.040), to include another taxable event, that is, the leasing of tangible personal property. In *White v. State*, 49 Wn. (2d) 716, 725, 306 P. (2d) 230 (1957), we held that the event upon which the tax is imposed is "the transaction." The transaction occurs when there is a change of ownership of the property, or when the right to possession transfers from one party to another. *Olympic Motors v. McCroskey*, 15 Wn. (2d) 665, 132 P. (2d) 355, 150 A. L. R. 1306 (1942). Laws of 1959, Ex. Ses., chapter 5, § 1, *supra* (RCW 82.04.040), added to the previous list of taxable events that of leasing personal

property. It did not add the payment of rentals as a taxable event.

I agree with the majority that Laws of 1959, Ex. Ses., chapter 3, § 8, p. 1650 (RCW 82.08.090), authorizes the state tax commission to collect taxes on the events described in RCW 82.04.040, measured by the rentals received. I do not agree with the majority's conclusion that the payment of rentals is a taxable event. Had such been the legislative intent, this event would have been described in Laws of 1959, Ex. Ses., chapter 5, § 1, *supra* (RCW 82.04.040), where the taxable events are described.

In the instant case, the event, that is, the transfer of possession of motor vehicles under the lease, occurred prior to the effective date of the amendment. Subsequent to this transfer, no event transpired upon which a sales or use tax might be imposed. The result of the majority's conclusion is not to impose a double tax, but to impose a tax under circumstances not authorized by the legislature.

I would reverse the judgment of the trial court.

HILL and FOSTER, JJ., concur with OTT, J.

---

May 18, 1961. Petition for rehearing denied.