[No. 36287. Department One. April 11, 1963.]

LAKEWOOD LANES, INC., *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.*

*Cartano, Botzer & Chapman* and *Robert A. O'Neill*, for appellant.

*The Attorney General* and *James A. Furber, Assistant*, for respondent.

FINLEY, J.—The appellant, Lakewood Lanes, Inc., a Washington corporation, operates a bowling establishment in Tacoma. Pursuant to RCW 82.32.150, 82.32.170 and 82.32.180, the appellant prosecuted a claim for the refund of $1,533.74

*Reported in 380 P. (2d) 466.

which it had paid as a retail sales tax during a 15-month period. After a denial of the claim by the State Tax Commission, an appeal was taken to the superior court. The instant appeal is predicated upon the judgment of the superior court dismissing the appellant's action with prejudice.

The facts are undisputed and have been stipulated by the parties. On September 4, 1956, the appellant entered into a 10-year lease agreement with American Machine and Foundry Pinspotter's, Inc. (hereinafter referred to as AMF) for the installation of 24 AMF automatic pinsetting machines. AMF manufactured these pinsetting machines outside the state of Washington. At the time the machines were installed in the appellant's bowling establishment, AMF paid the state a compensating (use) tax of $90 per machine, which represented 3⅓ per cent of each machine's value. Under the terms of the aforementioned 10-year lease, this tax of $90 per machine was passed on to, and assumed by, the appellant as an installation cost. AMF was completely reimbursed by the appellant for that tax expenditure prior to April 1, 1959, which was the date that Laws of 1959, Extraordinary Session, chapters 3 and 5, became effective. The pertinent portion of that statute provides:

"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state as a consumer any article of tangible personal property . . . acquired by lease, . . ."

Acting pursuant to this enactment, the tax commission informed AMF that it would be required to collect a retail sales tax from the appellant (AMF's lessee), measured by the gross income of rental payments as they fell due. The appellant paid this retail sales tax, and in this lawsuit is seeking to have it refunded by the tax commission.

■ *Gandy v. State* (1961), 57 Wn. (2d) 690, 359 P. (2d) 302, conclusively upheld the imposition of this retail sales tax on lessees of tangible personal property. The following language from that opinion (at page 698) indicates that it is immaterial when the lease was executed, because it is the time at which rentals become due that is deemed important for the imposition of the tax:

" . . . we conclude that the 1959 amendment (which brought the renting and leasing of tangible personal property within the definition of the word 'sale' as used in the act) was intended to apply prospectively to leases in effect on the date the amendment became law; that the tax was intended to attach as the rentals become due; . . ."

The appellant has attempted to distinguish the instant case from the *Gandy* decision on the basis of the following factual differences: (1) the *Gandy* decision involved three parties and two transactions, whereas the instant case only has two parties and a single transaction; and (2) the tax obligation was passed on in the instant case as a lump sum fixed obligation under the lease rather than a hidden part of seriatim rental payments as in *Gandy*.

Respecting the first contention: In *Gandy*, the Ford Motor Company manufactured the cars and sold them to Gandy, who paid a compensating (use) tax on those cars which he purchased for the purpose of leasing. Gandy then leased the cars to Elks Major. This existence of three parties makes it easy to visualize the occurrence of two separate transactions by Gandy; that is, first, a purchase, and subsequently, a lease agreement. However, by virtue of the Washington taxing statutes, the consequences in *Gandy* would have been the same even if Gandy had been removed from the picture—that is, if Ford had manufactured the cars and had brought them into the state for the purpose of directly leasing them to Elks Major. This result would occur because Laws of 1955, Extraordinary Session, chapter 10, § 3,[1] imposes a compensating (use) tax on a manufacturer who uses his own product within the state as a consumer. AMF in the instant case and Ford in the hypothetical variation of the *Gandy* case are identical. AMF is such a manufacturer because, although Lakewood Lanes, Inc., is physically using the machines in the possessory sense, AMF is a consumer of the machines in the sense that

---

[1]"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using within this state as a consumer any article of tangible personal property purchased at retail, or acquired by lease or by gift, or extracted or produced or *manufactured* by the person so using the same: . . ." (Italics ours.)

they are using them to produce revenue. Hence, even though there are only two parties, there are two transactions. It is the bringing of the machines into the state for the purpose of use as a consumer that constitutes the first transaction; the leasing to Lakewood Lanes, Inc., constitutes the second transaction. Thus we fail to see any merit in the appellant's first factual distinction.

As to the second contention: The appellant's obligation to reimburse AMF for its tax expenditure arose by virtue of the lease negotiated and executed by those private parties; it did not arise in response to any requirement of the state. The private negotiations culminating in the lease agreement under which the tax expenditure of AMF was passed on as an expense or cost to the appellant did not change the nature of the tax imposed upon AMF. Thus the manner in which the private parties passed on the tax as a business cost is immaterial; that is, whether it was passed on as a fixed sum or as a seriatim hidden charge. Hence, we conclude that the second factual distinction made by appellant is without merit.

We are not persuaded by the appellant's efforts to distinguish factually the instant case from the *Gandy* decision. We are convinced that *Gandy* is controlling. The judgment of the trial court should be affirmed, and it is so ordered.

HILL, WEAVER, and ROSELLINI, JJ., concur.

July 11, 1963. Petition for rehearing denied.