Edward L. GLADNEY

v.

REVIEW COMMITTEE, composed of F. O. Blair, William H. Hubbard, and Harry E. Mock, duly appointed by the United States Secretary of Agriculture, pursuant to the Agricultural Adjustment Act of 1938, as amended.

Civ. A. No. 10102.

United States District Court
W. D. Louisiana,
Monroe Division.

April 17, 1964.

**36**

James L. Dennis, Hudson, Potts & Bernstein, Monroe, La., for plaintiff.

Edward L. Shaheen, U. S. Atty., and Dosite H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., Dan P. Chisholm and Patrick C. Murphy, Attorneys, United States Department of Agriculture, Little Rock, Ark., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

This case arises under, and jurisdiction is specifically provided by, the Agricultural Adjustment Act. 7 U.S.C. §§ 1365–68. Petitioner is appealing from a determination by the local Review Committee refusing to adjust his 1964 upland cotton allotment. The facts upon which the Review Committee based its decision are not in controversy. The statement of facts contained in the brief of the Review Committee is supported by substantial evidence in the record and is therefore conclusive. 7 U.S.C. § 1365.

Due notice of Petitioner's allotment was mailed to him on December 2, 1963, by the local County Committee. Within fifteen days thereafter, and pursuant to 7 U.S.C. § 1363, Petitioner applied for a review of the allotment by the local County Committee, which was denied on January 14, 1964. Thereafter, he made timely application for relief to the County Review Committee which, after a hearing on March 12, 1964, affirmed the County Committee's determination of the allotment as correct. Due notice of the determination of the Review Committee was issued to Petitioner on March 13, 1964. Within fifteen (15) days thereafter this action was instituted against the Review Committee, pursuant to 7 U.S.C. § 1365, for the purpose of obtaining judicial review of the Review Committee's action.

Petitioner's farm is located in Morehouse Parish, Louisiana, and consists of 1,000 acres of land with 520.7 acres available for croplands. It is best suited for cotton farming because of the quality and type of its soil; and cotton produces a nearly five-times greater return per acre than any other crop. The farm is comparable to the best of farms within its administrative district in terms of land, labor and equipment available for the production of cotton, crop rotation practices, and the soil and other physical facilities affecting the production of cotton. The farm is classified as an "old" cotton farm under the Agricultural Adjustment Act, and 100% of the farm's allotment was planted to cotton in each of the three preceding years. It is the only farm owned or operated by Petitioner.

The allotment established for Petitioner's farm for the 1964 crop of upland cotton is 39.6 acres, or 7.6% of its cropland available for planting cotton. Some 17 farms comparable to petitioner's farm, located in the same vicinity, received allotments averaging approximately 27% of their total croplands, as shown by Exhibit 4 of the Record.

The allotments made represent two distinct allocations of acreage. First, the County Committee made the *initial* acreage allotment in accordance with the provisions of 7 U.S.C. § 1344(f) (8). The initial allotments were based upon each farm's history of acreage planted to cotton. Petitioner admits that they were made correctly. Next, the County Committee made the *reserve* acreage allotment. Petitioner contends that this allocation of acreage was incorrect because it was not made in accordance with pertinent provisions of the Agricultural Adjustment Act. 7 U.S.C. § 1344(e), (f) (3).

7 U.S.C. § 1344(e) provides:

"The State acreage allotment for cotton shall be apportioned to counties on the same basis as to years

and conditions as is applicable to the State under subsections (b), (c), and (d) of this section: Provided, That the State committee *may* reserve not to exceed 10 per centum of its State acreage allotment (15 per centum if the State's 1948 planted acreage was in excess of one million acres and less than half of its 1943 allotment) which *shall* be used to make adjustments in county allotments for trends in acreage, for counties adversely affected by abnormal conditions affecting plantings, or for small or new farms, or to correct inequities in farm allotments and to prevent hardship: * * *." (Emphasis added.)

7 U.S.C. § 1344(f) (3) provides:

"The County Committee *may* reserve not in excess of 15 per centum of the county allotment (15 per centum if the State's 1948 planted cotton acreage was in excess of one million acres and less than half its 1943 allotment) which, in addition to the acreage made available under the proviso in subsection (e) of this section, *shall* be used for (A) establishing allotments for farms on which cotton was not planted (or regarded as planted under Public Law 12, Seventy-ninth Congress) during any of the three calendar years immediately preceding the year for which the allotment is made, on the basis of land, labor, and equipment available for the production of cotton, crop-rotation practices, *and* the soil and other physical facilities affecting the production of cotton; and (B) making adjustments of the farm acreage allotments established under paragraphs (1) and (2) of this subsection so as to establish allotments which are fair and reasonable in relation to the factors set forth in this paragraph and abnormal conditions of production on such farms, or in making adjustments in farm acreage allotments to correct inequities and to prevent hardship: * * *." (Emphasis added.)

The State Committee allocated 5,296 acres from the State Reserve to Morehouse Parish for the purpose of correcting inequities and hardships in 1964. 28 F.R. 722.245(c). According to the record of the Review Committee hearing, the Morehouse Parish (County) Committee allocated 2,845.2 acres from the County Reserve to be used within Morehouse Parish in 1964 for the correction of inequities and hardships. All of the acreage from the reserve was allocated by the County Committee to *all* of the eligible old cotton farms in the Parish upon a *pro rata* basis, except for 203.4 acres set aside for errors and appeals and other minor exceptions not here pertinent.

As noted above, the record shows that, whereas the Gladney farm was allotted less than 8% of its cropland acreage for cotton production for 1964, the average of 17 other similar and representative "old" upland cotton farms in the immediate vicinity was slightly less than 27% of their total croplands. This great disparity was given no weight whatever in the decisions of the County or the Review Committees in denying Judge Gladney's application for an increased allotment. In allocating acreage from the reserves the County Committee took into consideration only the 1963 allotment, i. e., each farm was assigned sufficient reserve acreage to give it the same allotment it had for 1963. It appears without dispute, therefore, that the County Committee, and the Review Committee in affirming the County Committee, have mechanically applied a mathematical formula for the assignment of reserve acreage allotments without regard to any of the factors which the Act and the regulations required it to consider in correcting inequities and preventing hardships, such as the land, labor and equipment available for the production of cotton; crop rotation practices; the soil and other physical facilities affecting the production of cotton; and abnormal conditions of production. 7 U.S.C. § 1344(f) (3).

 It is our legal conclusion, therefore, that the County and Review Committees abused their discretion by us-

ing the reserve acreage for a purpose not authorized by the Act, i. e., the distribution of nearly 8,000 reserve acres in allotments to *all* eligible old cotton farms within the Parish solely upon the basis of the 1963 cotton allotments. The Committees should have used the reserve acreage for the specific purpose for which it had been directed to be allocated by Congress and by the 1964 regulations of the Secretary of Agriculture, i. e., the establishment of allotments which are fair and reasonable by the correction of inequities and the prevention of hardships. 7 U.S.C. § 1344(e), (f) (3); 28 F.R. 11041, "Handbook 1–CN," Cotton AA Regulation 1, Section 722.211(c) (4).

■ By improperly using the reserve acreage and by failing to adjust Petitioner's allotment by taking into consideration the factors prescribed by the Act and the regulations, the County and Review Committees committed an error of law. Petitioner's farm falls within the meaning of "inequity" and "hardship" under the terms of the Act and regulations, and he, therefore, legally is entitled to have his cotton allotment adjusted in order to establish for him a fair and reasonable allotment.

Since the season for planting cotton is short, a speedy review of the determination of the Review Committee is required by the Act. 7 U.S.C. §§ 1365–66. Thus Congress has indicated a concern for *timely* enforcement of the farmer's right to a correct cotton allotment. Consistently, the Court is authorized to remand the case to the Review Committee "with direction either to make such determination as the court shall determine to be in accordance with law or to take such further proceedings as, in the court's opinion, the law requires." 7 U.S.C. § 1366. It is our legal determination that, in order to avoid the hardship and inequities described, an increase in the allotment to Petitioner's farm to the approximate average allotment of comparable neighboring farms within the Parish (approximately 27% of cropland, or, in Petitioner's case, 141 acres) would constitute a determination in accordance with law.

The case will be remanded for a new determination by the Review Committee not inconsistent with this opinion.

The "marketing quotas" for other farms shall not be affected hereby. 7 U.S.C. § 1368.