[No. 38928. En Banc. January 5, 1968.]

THE STATE OF WASHINGTON, *on the Relation of Namer
Investment Corporation, Appellant,* v. M. J. R.
WILLIAMS *et al., Respondents.**

*Reported in 435 P.2d 975.

2

*Stanley B. Allper,* for appellant.

*Charles O. Carroll, James E. Kennedy,* and *William L. Paul, Jr.,* for respondents.

HAMILTON, J.—In the context of a mandamus proceeding, appellant (plaintiff) seeks a judicial declaration that the 1 per cent excise tax on real-estate sales and transactions levied by King County, Washington, pursuant to RCW 28.45, does not apply to unexercised lease-options. The trial court granted respondents' motion for summary judgment. This appeal on an agreed statement of facts, followed.

Briefly, the pertinent facts are these: Appellant is a Washington corporation which owns improved real property located at 15220 Aurora Avenue North in King County. The property has been used for the operation of a discount type department store under lease agreements with two successive tenants. The most recent of these agreements was entered into by appellant in 1965. This agreement is in the form of a lease-option, and gives rise to the present controversy.

The initial term of the lease-option is 7 years at a monthly rental of $5,500. The lessee, in addition to occupancy, is given an option to purchase the property during

this term for an established price of $528,000. In the event the lessee exercises the option, a formula provides that a portion of any rentals paid prior to the exercise date will be applied against principal and interest on the purchase price as though, for purposes of that calculation only, the option had been exercised at the commencement of the lease term. If the option to purchase is not exercised, the lessee is not entitled to any refund of rentals paid.

The initial lease-option term will expire in 1972. To date the lessee has not exercised the option to purchase, but has continued in possession of the property and in good standing by regularly paying the monthly rentals.

The King County Auditor has refused to record a memorandum of the agreement until it bears the stamp of the King County Treasurer indicating satisfaction of the 1 per cent excise tax on real-estate transactions. The King County Treasurer has refused to affix such a stamp to the memorandum until appellant pays the sum of $5,280, that is, 1 per cent of the option price. This action by the respective county officials is in accord with King County Resolution 29779.

In challenging its present liability for the tax, and in seeking a mandate to compel recordation of the memorandum of agreement, appellant attacks the validity of RCW 28.45 and King County Resolution 29779 as applied to the transaction in question. In this respect, appellant asserts (1) an unexercised lease-option is not a "sale" of real estate, and therefore it is not a taxable event subject to the 1 per cent excise tax; (2) if the transaction is held to be a sale within the purview of the pertinent legislation, then the legislation is unconstitutional as applied to appellant because (a) it amounts to a denial of due process and equal protection of the law, and (b) constitutes a standardless delegation of legislative power to the board of county commissioners; and (3) if the legislation is valid, then relief should be granted upon the basis of individual hardship and inequity. No other grounds of alleged invalidity are asserted by appellant in this court.

Appellant's first contention is predicated upon the argument that the excise tax provided for by RCW 28.45 is one levied only upon "sales" of real property. From this premise, appellant proceeds to point out the technical distinctions between a real-estate sale and a lease-option, and ends the syllogism with the conclusion that a lease-option is not a taxable event under the statute.

We might agree with appellant were it not for the fact that the legislature, in enacting RCW 28.45, defined the taxable events covered by the statute in the following manner:

> As used in this chapter, the term "sale" shall have its ordinary meaning *and shall include* any conveyance, grant, assignment, quitclaim, or transfer of the ownership of or title to real property, including standing timber, *or any estate or interest therein* for a valuable consideration, and any contract for such conveyance, grant, assignment, quitclaim, or transfer, *and any lease with an option to purchase real property*, including standing timber, *or any estate or interest therein* or other contract *under which possession of the property is given to the purchaser*, or any other person by his direction, which title is retained by the vendor as security for the payment of the purchase price. (Italics ours.) RCW 28.45.010.

Proceeding from the foregoing definition of taxable events, the legislature, in the second paragraph of RCW 28.45.010, spelled out the property transfers or transactions which it excluded or did not intend to cover. Among the types of transfers of estates or interests in property excluded are:

> a transfer by gift, devise, or inheritance, *a transfer of any leasehold interest other than of the type mentioned above* [lease with an option to purchase real property], . . . a transfer in compliance with the terms of *any lease or contract* upon which the tax as imposed by this chapter has been paid or where *the lease or contract* was entered into prior to the date this tax was first imposed, . . . . (Italics ours.) RCW 28.45.010.

A fair reading of the definition and the exclusions therefrom, as set forth in RCW 28.45.010, render it manifest that

the legislature intended a broader excise tax coverage on transfers of property interests than one which would be limited to the technical and legalistic meaning of the word "sale." And certainly it is unmistakably clear that the legislature intended that the term "sale" would not only have its ordinary meaning but would include "any lease with an option to purchase real property." Particularly would this seem so when the latter phrase is read in pari materia with the exclusions set forth in the next paragraph, embracing as such exclusions do, the italicized references to leaseholds and leases. In the face of this rather specific and embracive legislative language, it remains only to determine whether the legislature was invested with the power to so broaden the technical meaning of the term "sale" for the purpose of imposing the excise tax in question.

 In speaking of the power of the legislature with respect to defining or classifying taxable events amenable to an excise tax, we had occasion to summarize our former holdings in *Gruen v. State Tax Comm'n*, 35 Wn.2d 1, 32, 211 P.2d 651 (1949), as follows:

It can be stated that there is no constitutional limitation upon the selection by the legislature of the subjects for excise tax, so long as there is any reasonable basis for the classification whatsoever. The two quotations which follow contain previous holdings of this court in accordance with the statement just made:

"It is well settled law that the legislature may constitutionally classify persons with reference to their business, occupation or inheritance, with a view of exacting from them excise or privilege taxes differing in amount, or differing in that one class shall be taxed and another class shall be exempted, so long as there may be some reasonable basis for such classification, and so long as all in each class shall be taxed or exempted alike. [Citing cases.]" *State v. Hart,* 125 Wash. 520, 217 Pac. 45.

"This being an excise tax, the legislature, under the 14th amendment to our state constitution, has very broad power, and we cannot interfere with that power except for arbitrary action, clear abuse, or constructive fraud appearing on the face of the act or from facts of which we may take judicial knowledge.

" 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' *Brown-Forman Co. v. Kentucky*, 217 U. S. 563." *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 25 P. (2d) 91.

And *see also Smith v. State*, 64 Wn.2d 323, 391 P.2d 718 (1964), wherein we reiterated, at 330:

And the power of a state to tax within its boundaries embraces all persons, property and pursuits except as the power may be limited by the constitution of the state or the United States. *Moran v. New Orleans*, 112 U.S. 69, 28 L. Ed. 653, 5 S. Ct. 38 (1884); *Greenough v. Tax Assessors*, 331 U.S. 486, 91 L. Ed. 1621, 67 S. Ct. 1400, 172 A.L.R. 329 (1947). Exercised within constitutional limits, the power of a state to tax has been called plenary, and all subjects over which this sovereign power extends are objects of taxation. (Citing cases.)

In keeping with these principles, we have heretofore upheld the extension of the retail sales tax to leases of tangible personal property. *Gandy v. State*, 57 Wn.2d 690, 359 P.2d 302 (1961); *Lakewood Lanes, Inc. v. State*, 61 Wn.2d 751, 380 P.2d 466 (1963); *Black v. State*, 67 Wn.2d 97, 406 P.2d 761 (1965).

In the instant case we find no constitutional inhibition to the legislative classification or definition of a "lease with an option to purchase" as a property interest transfer or transaction subject to the tax imposed by RCW 28.45.

This, then, brings us to appellant's second attack upon the tax, *i.e.*, whether imposition of the tax on the type of transaction here involved amounts to a denial of due process and equal protection of the law.

We think not.

■ Due process, equal protection and the privileges and immunities clauses of the federal and state constitutions impose general requirements of reasonableness in the classification of persons and property to which a tax is

applicable. As we have heretofore pointed out, the power of the legislature to select and define the activity upon which an excise tax will be levied, within these restrictions and limitations, is plenary, and is an exercise of legislative discretion which is rarely upset by the courts.

It is not the function of this court in cases like this to consider the propriety of the tax, or to seek for the motives or to criticize the public policy which may have prompted adoption of the legislation. *State Board of Tax Comm'rs of Indiana v. Jackson*, 283 U. S. 527, 75 L. Ed. 1248, 51 Sup. Ct. 540, 73 A.L.R. 1464 (1931). Our obligation is to sustain the classification adopted by the legislature if it is neither capricious nor arbitrary, and is reasonably related to some valid public and legislative purpose. *Robison v. Dwyer*, 58 Wn.2d 576, 364 P.2d 521 (1961); *Hemphill v. Tax Comm'n*, 65 Wn.2d 889, 400 P.2d 297 (1965); *Black v. State, supra*.

Taken as a whole, RCW 28.45 reflects a legislative intent to tax those allied and related transfers of interests in real property which are listed and not specifically excluded. The lease-option agreement or contract might well have been considered by the legislature as a device through which the tax could be evaded, or a device to unduly postpone attachment of the tax liability. Thus, specifically including the "lease-option" arrangement within the classification of taxable events, appears to be a rational means to accomplish a legislative purpose—closing potential loopholes in a scheme of excise taxation. A similar legislative purpose may well have prompted the inclusion of "renting and leasing" in the definition of "sale" as used in an excise tax on personal property transactions. RCW 82.04.040, 82.08.020. This was upheld, as heretofore pointed out, in *Black v. State, supra*.

■ Appellant under this contention further assails the legislation upon the grounds that it fails to provide equal treatment for all persons falling within the classification. This inequality, appellant contends, springs from the legislative authorization to tax a lessor-optionor before, and regardless of whether the option to purchase is exercised. We are convinced, however, that RCW 28.45.035 adequately

protects against and fully meets this contention, for it provides:

The board of county commissioners shall provide by ordinance for the determination of the selling price in the case of leases with option to purchase, and *shall further provide that the tax shall not be payable, where inequity will otherwise result, until and unless the option is exercised and accepted.* (Italics ours.)

Although the italicized portion of the statute may be somewhat ineptly worded, it would appear, upon a careful reading, that the legislature intended that the tax should not be imposed until the option is exercised and accepted, *unless it would be equitable to impose the tax at an earlier stage in the course of the transaction.* Determination of the equities that can arise under various circumstances was then left to the administrative action of the county officials of those counties electing to impose the tax.

This conclusion brings us to appellant's next contention —that the legislation contains no proper standards or legislative guidelines by which the respective county officials can determine (a) the selling price, and (b) the equities or inequities of imposing the tax upon unexercised lease-options.

Again, we are unable to agree.

■ The constitutional prohibition against delegation of legislative power (Const. art. 2, § 1 (amendment 7)) does not preclude delegation of authority to administrative officials or commissions to determine some fact or state of things upon which the application and operation of a law is made to depend. *Senior Citizens League, Inc. v. Department of Social Security,* 38 Wn.2d 142, 228 P.2d 478 (1951); *Shoreline School Dist. No. 412 v. Taxpayers of Shoreline School Dist. No. 412,* 52 Wn.2d 849, 329 P.2d 829 (1958); P. Trautman, *Administrative Law Problems of Delegation and Implementation in Washington,* 33 Wash. L. Rev. 33 (1958). In this respect, we said in *Keeting v. Public Util. Dist. No. 1 of Clallam Cy.,* 49 Wn.2d 761, 306 P.2d 762 (1957), at 767:

It is unconstitutional for the legislature to abdicate or transfer to others its legislative function. It is not uncon-

stitutional for the legislature to delegate administrative power. In so doing, the legislature must define (a) what is to be done, (b) the instrumentality which is to accomplish it, and (c) the scope of the instrumentality's authority in so doing, by prescribing reasonable administrative standards.

RCW 28.45.035 vests in the counties the function of prescribing an administrative method for determining the selling price to be taxed in lease-option transactions. This is to be distinguished from the legislative function of *defining* "selling price," which is accomplished by the legislature in RCW 28.45.030, whereby it is provided:

> As used in this chapter, the term "selling price" means the consideration, including money or anything of value, paid or delivered or contracted to be paid or delivered in return for the transfer of the real property or estate or interest in real property, and shall include the amount of any lien, mortgage, contract indebtedness, or other incumbrance, either given to secure the purchase price, or any part thereof, or remaining unpaid on such property at the time of sale.

> The term shall not include the amount of any outstanding lien or incumbrance in favor of the United States, the state, or a municipal corporation for the taxes, special benefits, or improvements.

In our view, the legislative definition of the "selling price" provides the constitutionally required framework within which the counties must exercise their ministerial determination of the "selling price" in the lease-option transactions. The basis for any excise tax to be levied, then, must be the actual consideration paid or delivered or contracted to be paid or delivered in exchange for the ultimate transfer of the designated interest in real property. It is against the background of this definition of "selling price" that a number of our previous cases arising out of RCW 28.45 have been decided. *See, Deer Park Pine Indus., Inc. v. Stevens Cy.*, 46 Wn.2d 852, 286 P.2d 98 (1955); *Doric Co. v. King Cy.*, 57 Wn.2d 640, 358 P.2d 972 (1961); *Christensen v. Skagit Cy.*, 66 Wn.2d 95, 401 P.2d 335 (1965); *Estep v. King Cy.*, 66 Wn.2d 76, 401 P.2d 332 (1965); *Senfour Inv. Co. v.*

*King Cy.*, 66 Wn.2d 67, 401 P.2d 319 (1965); *Ban-Mac, Inc. v. King Cy.*, 69 Wn.2d 49, 416 P.2d 694 (1966).

RCW 28.45.035 also vests in the counties the administrative function of determining when a lease-option should be taxed so as to avoid "inequity." The basic standards to guide the counties in the exercise of this function can be gleaned from other sections of RCW 28.45. Section .010 clearly provides that such transactions are amenable to the tax. Section .030 specifies that the basis for the tax is the "selling price" as defined. Section .035 provides for the creation of a mode of administrative determination of the selling price in lease-option cases, and further provides that the tax shall not be payable until the selling price is ascertained and the option is exercised, unless it would otherwise be equitable to enforce or collaterally secure payment before the option is actually exercised.

The legislature is not required to explicitly legislate in great detail for the guidance of administrative bodies. It is sufficient if basic and reasonably ascertainable guidelines are prescribed from which the purpose of the enactment can be accomplished. *Miller v. Tacoma*, 61 Wn.2d 374, 378 P.2d 464 (1963). Under the circumstances surrounding imposition of the excise tax in the present case, we find that the standards to be gleaned from the general provisions of the statute are sufficient to guide the counties in performing their administrative function in regard to the treatment of unexercised lease-options. The particular function of administratively determining when a tax imposed upon an unexercised lease-option is "equitable" or "inequitable" is not unlike a similar delegation of power upheld in *Wheeler School Dist. No. 152 v. Hawley*, 18 Wn.2d 37, 137 P.2d 1010 (1943), where a state committee was established to approve or disapprove the formation of new school districts and alteration of district boundaries upon the basis of whether the planned changes were "fair and equitable." *Cf.*, also, *State ex rel. Oregon R.R. & Navigation v. Railroad Comm'n of Washington*, 52 Wash. 17, 100 Pac. 179 (1909); *State Bd. of Medical Examiners v. Macy*, 92 Wash. 614, 159 Pac. 801 (1916); *Continental Ins. Co. v. Fishback*, 154 Wash. 269, 282

Pac. 44 (1929); *State ex rel. Washington Toll Bridge Authority v. Yelle*, 195 Wash. 636, 82 P.2d 120 (1938); *Gericke v. Philadelphia*, 353 Pa. 60, 44 A.2d 233 (1945); *Gladney v. Review Comm.*, 230 F. Supp. 35 (W.D. La. 1964).

Against the foregoing background we come to appellant's final contention, that is, that the tax imposed upon the unexercised option in the present case is inequitable and should be deferred until the option is, in fact, exercised.

■ In resolving this contention, we are, at the outset, met with the proposition that under the terms and the administrative application of King County Resolution 29779, the tax is imposed upon all unexercised lease-options as a prerequisite of recording the instrument, the only pertinent exception being in those instances where the lease payments do not apply on the ultimate sales price. In our view, the net effect of this application of the resolution is at odds with the legislative intent expressed in RCW 28.45.035, which we construe to be that the tax shall be imposed in all cases when the option portion of the lease is exercised, unless it is otherwise equitable, under the surrounding circumstances pertaining to a particular lease-option, to impose the tax or require suitable security for the tax at an earlier stage in the transaction. This latter determination cannot be made by a mechanical application of a county resolution which forbids the filing or recording of the lease-option instrument until the tax is paid. It is, rather, an administrative determination and a decision which must be made in the light of the circumstances pertaining to the particular lease-option agreement under consideration, otherwise the instrument is entitled to recordation and the tax is not collectible until the option is exercised. The county resolution as presently administered is accordingly inconsistent with RCW 28.45.035.

In the instant case, the selling price under the lease-option agreement is $528,000. The aggregate of rentals applicable to the selling price over the 7-year lease term is in the neighborhood of $229,072.55, and the balance to be paid upon exercise of the option in the neighborhood of $298,927.45. Whether it would be equitable or inequitable to

collect all or part of the tax as measured by the "selling price" has not been properly determined. Accordingly, appellant is entitled to recordation of the lease-option memorandum and the deferment of the tax until the option is actually exercised, unless an appropriate administrative determination is otherwise made.[1]

The order of dismissal is therefore vacated and the cause is remanded to the superior court for issuance of a writ of mandate in compliance herewith.

FINLEY, C. J., HUNTER, HALE, and NEILL, JJ., concur.

HILL, J. (concurring in the result)—While still a member of this court, Judge Charles T. Donworth wrote a concurring opinion in this case which I now adopt verbatim as my own. It is as follows: I do not reach the issue of the validity of the King County Resolution No. 29779, which is discussed in the majority opinion.

As I view the principal legal issue presented by the stipulated facts, it is whether, under RCW 28.45.010 et seq., the county may validly impose a 1 per cent sales tax on the lessor of real property where the lease contains an option (which the lessee may or may not exercise) to purchase the leased property at any time during the 7-year term of the lease. The instrument was executed on March 19, 1965.

The important provisions of the lease-option are stated in appellant's brief as follows:

(1) There is an initial term of seven years at a monthly rental of $5,500.00; (2) There is an option to purchase during initial term for the established price of $528,000.00; (3) In the event the lessees exercise their option a formula provides that rentals would be applied toward the purchase price according to a detailed calcu-

[1]The legislature by Laws of 1967, Ex. Ses., ch. 149, § 1, amended RCW 28.45.035 to provide that the state department of revenue shall "provide by rule for the determination of the selling price in the case of leases with option to purchase, and shall further provide that the tax shall not be payable, where inequity will otherwise result, until and unless the option is exercised and accepted." The county's determination in the instant case should be guided by such rules as may be promulgated by the state department of revenue in accordance with the views expressed in this opinion.

lation set forth in the instrument. This formula in essence provides that a part of the rentals would be considered to apply against principal and interest of the option purchase price as though, for the purposes of that calculation only, the option had been exercised at the commencement of the initial lease term. If the option to purchase is not exercised, the lessees are not entitled to a refund of any of the rentals paid.

Appellant tendered a memorandum of the lease to the county auditor for recording, but it was refused because it did not bear the stamp of the county treasurer showing payment of the 1 per cent excise tax on real-estate sales required by Resolution No. 29779. Upon appellant's request to the treasurer to affix such stamp on the document, his request was refused unless appellant paid an excise tax in the amount of $5,280. This mandamus proceeding was then instituted to compel the county officers above referred to to comply with appellant's requests.

The question for decision presented by this case is one which was not passed upon by this court in *Mahler v. Tremper*, 40 Wn.2d 405, 243 P.2d 627 (1952), when the issue of the validity of the same statute was before us. See concurring opinion in that case.

In the *Mahler* case, it was held by a unanimous court sitting en banc that the tax there involved was an excise tax on the *sale* of real estate, the court saying, at 406:

> The tax incidence in the case at bar relates to the sale of real estate. The tax sustained in the *Morrow* case, *supra* [*Morrow v. Henneford*, 182 Wash. 625, 47 P. (2d) 1016], related to, or was imposed upon, the sale of personal property. Appellant has advanced many ingenious arguments, but we can visualize no distinction between the *Morrow* case and the one at bar, except the fact that the former was concerned with a transaction tax involving personal property, while the latter is concerned with a transaction tax involving real estate. We recognize the distinction between real and personal property and realize quite well that many arguments involving the difference can be made in an effort to distinguish the tax in the *Morrow* case from the one in the case at bar. Without more, we are convinced that chapter 11 imposes an excise, and that constitutional provisions relative to taxes

on property are no more applicable here than they were in *Morrow v. Henneford, supra.*

After quoting from the *Morrow* case, *supra,* and *Newman v. Schlarb,* 184 Wash. 147, 50 P.2d 36 (1935), we then stated, at 409:

We are committed to the proposition that a tax upon the sale of property is not a tax upon the subject matter of that sale. A sales tax upon personal property or a sales tax upon real property is a tax upon the act or incidence of transfer. The imposition relates to an exercise of one of several rights in and to property. Imposition is not upon each and every owner merely because he is the owner of the property involved.

The act with which we are here concerned was passed by the legislature in 1951.[2] See Laws of 1951, 1st Ex. Ses., ch. 11. It is entitled:

An Act relating to the support of the common schools, providing for the levy by counties of excise taxes upon the sale of real estate for the support thereof; repealing sections 28.47.030 and 28.47.040, R.C.W.; and declaring an emergency.

Its stated purpose is to empower counties to levy an excise tax upon the *sale of real estate* for the support of the common schools. Nothing in the title advises legislators or the public that such excise taxes are also to be levied on the execution of *leases* of real property wherein the lessee is granted an option to purchase the property during the term thereof.

Article 2, section 19 of the Washington State Constitution provides that:

---

[2]RCW 28.45.010, the provision of the act which defines "sale," was first enacted in Laws of 1951, 1st Ex. Ses., ch. 11, § 7, p. 110. It was amended in Laws of 1951, 2d Ex. Ses., ch. 19, § 1, p. 74, again amended by Laws of 1953, ch. 94, § 1, p. 183, and again by Laws of 1955, ch. 132, § 1, p. 574. As originally enacted, the provision read: ". . . and any lease with an option to purchase real property or any estate or interest in real property . . . ." As first amended, the clause read: ". . . and any lease with an option to purchase real property, including standing timber, or any estate or interest therein . . . ." The clause presently provides that: ". . . and any lease with an option to purchase real property, including standing timber, or any estate or interest therein . . . ."

No bill shall embrace more than one subject, and that shall be expressed in the title.

In *YMCA v. State*, 62 Wn.2d 504, 506, 383 P.2d 497 (1963), this court stated that:

The purposes of this constitutional mandate are: (1) to protect and enlighten the members of the legislature against provisions in bills of which the titles give no intimation; (2) to apprise the people, through such publication of legislative proceedings as is usually made, concerning the subjects of legislation that are being considered; and (3) to prevent hodgepodge or logrolling legislation. *Miller v. Tacoma*, 61 Wn. (2d) 374, 378 P. (2d) 464, and cases cited therein. As we said in that case, a title complies with the constitution if it gives notice that would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law.

In my view, a person reading the title of this act would reasonably infer that the incidence of the tax was the transfer of title to real estate or the execution of a contract between a seller and buyer to convey it upon certain terms. These are the only taxable events indicated by the title. Therefore, in so far as the act purports to levy an excise tax upon a lease with option prior to the exercise of the option, I am of the opinion that the act is repugnant to article 2, section 19 of the state constitution.[3]

In the body of the act (RCW 28.45.010), the term "sale" is defined as having its ordinary meaning and, in addition, to include

---

[3]It should be pointed out that this was the position taken by appellant at the proceedings in the trial court.

I am cognizant of the challenge to RCW 28.45.010 on the ground that it violates article 2, section 19 of the constitution, which was before this court in *Mahler v. Tremper*, 40 Wn.2d 405, 243 P.2d 627 (1952). In that case, appellant contended that the title was constitutionally defective in that more than one subject was embraced in the text of the bill; specifically, that the provision provided general and unrestricted revenue for the counties by allowing one half of one per cent of the proceeds of the tax to be placed in the current county expense fund, *i.e.*, that the provision constituted a general revenue raising provision which is inconsistent with or beyond the matters enumerated in the title.

[A]ny conveyance, grant, assignment, quitclaim, or transfer of the ownership of or title to real property, including standing timber, or any estate or interest therein . . . and any contract for such conveyance . . . and any lease with an option to purchase real property . . . .

The second paragraph of the section specifies what is *not* included in the term "sale." Among other exclusions is "a transfer of any leasehold interest other than the type mentioned above," (*i.e.*, a lease with an option to purchase real property).

Thus the act does not authorize the collection of an excise tax by the county upon the execution of a lease of real property *or* the execution of an option to buy real property. It is only when the two legal transactions are contained in one instrument that the act declares the transaction to constitute a taxable event.

A transfer of a leasehold interest is expressly exempted by the statute. Obviously, a lease does not constitute a "sale," and cannot come within the ambit of the title of the enactment.

The same is true of an option. In 8 G. Thompson, Real Property § 4569 (perm. ed.), it is stated that:

An option is not an actual or existing contract, but merely a right reserved in subsisting agreement. It is a continuing offer of a contract, and if the offeree decides to exercise his right to demand the conveyance, he must signify that fact to the offerer. *The option is not a sale. It is not even an agreement for a sale.* At best, it is but a right of election in the party securing the same to exercise a privilege, and only when that privilege has been exercised by acceptance does it become a contract to sell. . . . A contract of sale imposes upon the vendee an obligation to buy. An option confers a privilege or right to elect to buy, but it does not impose any obligation to buy. "An option is nothing more than a continuing offer to sell; but until it is accepted it does not become a contract of sale, for it lacks the element of agreement between the minds of the parties. It is only when there has been an acceptance of a proposal to sell that the vendee becomes in any sense the equitable owner of the subject-matter of the option." "There is a decided distinc-

tion between an 'option' to purchase, which may be exercised or not by the prospective purchaser, and an absolute contract of sale, where one of the parties agrees to sell and the other to buy certain property; the sale to be completed within an agreed time. In the latter case the mere lapse of time with a contract unperformed does not entitle either party to refuse to complete it, and therefore time is not of the essence of the contract; . . . ." (Footnotes omitted.) (Italics mine.)

This court recognized the distinction some 54 years ago in *Wright v. Suydam*, 72 Wash. 587, 595, 131 Pac. 239 (1913), wherein we said:

In 1 Warvelle on Vendors (2d ed.), §125, the distinction between an option and a contract for sale is commented upon as follows:

"There is a marked distinction between an option of sale and a contract for sale, although such distinction is frequently overlooked. If without consideration an option is a mere proposal which may be retracted at any moment; if given for a consideration it amounts to nothing more than a privilege to purchase at a certain price or within a certain time. It is not a sale; it is not even an agreement for a sale; at best it is but a right of election in the party receiving same to exercise a privilege, and only when that privilege has been exercised by acceptance does it become a contract to sell. If based upon a consideration it cannot be extended beyond the time limited without a new consideration, and even though this is attempted and such extension is evidenced by a writing it is still *nudum pactum* and void."

Again, in *Jacobson v. Barnes*, 158 Wash. 691, 694, 291 Pac. 1109 (1930), we said:

An option does not constitute a sale or contract of sale, and cannot be enforced as such by either party thereto until such option is exercised by acceptance of the offer. 39 Cyc. 1237.

Yet, although the combining of a lease with an option to purchase the leased property changes the nature of neither, the combination is, by RCW 28.45.010, made a taxable event under a statute which purports in its title to impose an excise tax only on the "sale" of real property. This, in

my opinion, is impermissible under article 2, section 19 of the constitution.

It is to be recognized that the legislature may, by defining the terms used in an enactment, broaden or limit the application of those particular terms. The power is not, however, without limit. One such limit is, it would seem obvious, imposed by article 2, section 19 of the state constitution. If, by use of a definition, the legislature seeks to include within a term used (*i.e.*, sale), matters which bear no reasonable relation to that term and which, therefore, fail to accomplish the threefold purpose of article 2, section 19 (see discussion at page 15, *supra*), it must be plain that the mandate of article 2, section 19, has been violated by Laws of 1951, 1st Ex. Ses., ch. 11.

Therein lies the vice of the present enactment. The legislature has sought to include within the term "sale" (which involves the transfer of an interest for a consideration called the "selling price," as defined in RCW 28.45.030), matters (*i.e.*, lease-options) which bear no reasonable relation to the term in that the term "sale" fails to (1) enlighten the members of the legislature and apprise them of the provision of which the title gives no intimation; (2) apprise the public concerning the subject of the legislation; and (3) prevent hodgepodge or logrolling legislation.

A second reason upon which I base my view that the act sought to be enforced by King County is void is found in the legislature's inclusion within its definition of the term "sale" (which is the taxable event upon which the excise tax is based), a lease with an option to purchase. In so doing, the legislature ignored the basic legal distinction between a conveyance of title and the granting of a leasehold interest in real property, and between a contract of sale and an option to purchase. These firmly established and settled distinctions have already been set forth in this concurring opinion in relation to the insufficiency of the title of the act. See, also, *Wright v. Suydam*, 72 Wash. 587, 131 Pac. 239 (1913), in which this court recognized the antithetical meanings of the terms "sale" and "option to purchase."

But even conceding, arguendo, the sufficiency of the title of the act, I can hardly concede the legislature's power to abolish such basic distinctions in order to prematurely impose an excise tax on a taxable event which has not yet taken place and may never take place.

There has not been, and may never be, a "transfer of the real property or estate or interest [therein]," which is the event made taxable under this chapter. Unless and until the option is exercised, there has been no "sale" of real property.

A further objection to the imposition of this excise tax in the case of a lease with an option to purchase prior to the exercise of the option is to be found within the act itself.

RCW 28.45.050 provides that the excise tax here in dispute may be imposed by the county commissioners by ordinance:

[U]pon *sales* of real estate not exceeding one percent of the *selling price.* (Italics mine.)

Selling price is defined generally by RCW 28.45.030, which provides, in part, that:

As used in this chapter, the term "selling price" means the *consideration,* including money or anything of value, *paid or delivered or contracted to be paid or delivered in return for the transfer of the real property or estate or interest in real property* . . . . (Italics mine.)

It should be readily apparent, even on casual reading, that the excise tax thus provided for cannot be levied, prior to exercise of the option, upon the price for which the optionee may purchase the property should he choose to purchase. Such sum has not been "paid or delivered or contracted to be paid or delivered," nor has any sum in the present case been so paid or contracted to be paid. It is inconceivable that a tax may be imposed upon such a basis.

In *Deer Park Pine Indus., Inc. v. Stevens Cy.*, 46 Wn.2d 852, 286 P.2d 98 (1955), we had under consideration the applicability of the 1 per cent tax on real-estate sales authorized by RCW 28.45 to the distribution of real prop-

erty to stockholders by the statutory liquidating trustee of a corporation in dissolution. After quoting the definition of selling price, set forth above, the court said, at 855:

> The science of semantics would be stretched beyond permissible limits to conclude that the transaction under examination constitutes a sale in "its ordinary meaning." If the event is a taxable one, it must be held to be such because it constitutes a "conveyance . . . for a valuable consideration."

There has been, in this case, no conveyance or contract to convey, nor has there been any valuable consideration paid or contracted to be paid upon which the 1 per cent excise tax may be levied under RCW 28.45.030.

Finally, it seems to me that the equities of the situation must not be overlooked. RCW 28.45.035, which was in effect at the time this dispute arose, provided that the board of county commissioners[4] shall provide that the tax:

> [S]hall not be payable, where inequity will otherwise result, until and unless the option is exercised and accepted.

In *Perkins v. King Cy.*, 51 Wn.2d 761, 321 P.2d 903 (1958), a tax was imposed upon the execution of a contract of sale under which appellant agreed to transfer the title to certain real estate to the purchaser. The vendee defaulted in its payments due under the contract and the parties thereafter agreed to rescind the contract. Appellant applied for a refund of the excise tax which he had paid, and, when the county refused the refund, appellant instituted action in superior court to recover the amount of the tax. The superior court sustained a demurrer to the complaint, and

---

[4]The 1967 legislature substantially altered the provisions of RCW 28.45.035, which now provides, in part, that: "The *state department of revenue* shall provide by rule . . . that the tax shall not be payable, where inequity will otherwise result, until and unless thè option is exercised and accepted." (Italics mine.) See Laws of 1967, Ex. Ses., ch. 149, § 1, effective July 1, 1967. A new section was also added to RCW 28.45, which provides that: "The departmnt of revenue is authorized and directed to prescribe minimum standards for uniformity in reporting, application, and collection of the real estate excise tax imposed by this chapter." See Laws of 1967, Ex. Ses., ch. 149, § 3.

the action was dismissed. Upon appeal to this court, we said, at 762:

> [A] sale, as defined by RCW 28.45.010, had been consummated, and a so-called taxable event or incident had occurred within the contemplation of the statute. The tax accrued. It was paid by the real-estate vendor to the proper county official. That should be—and as far as we are concerned it is—the end of the matter, because the legislature made no provision in the tax statute for a refund of the excise imposed and collected under the circumstances involved in the instant case.

It should be noted that *Ban-Mac, Inc. v. King Cy.*, 69 Wn.2d 49, 416 P.2d 694 (1966); *Estep v. King Cy.*, 66 Wn.2d 76, 401 P.2d 332 (1965); *Senfour Inv. Co. v. King Cy.*, 66 Wn.2d 67, 401 P.2d 319 (1965); and *Doric Co. v. King Cy.*, 57 Wn.2d 640, 358 P.2d 972 (1961), all permitted recovery of the tax paid under protest which had been levied under the authority of RCW 28.45 and the county enactments pursuant thereto. The court, in the *Doric Co.* case further held that is was proper for the trial court's judgment against the county in the action to recover taxes paid under protest to include 6 per cent interest on the amount of the taxes from the date of payment. *Doric Co. v. King Cy.*, 59 Wn.2d 741, 370 P.2d 254 (1962).

The distinction between the *Perkins* case, *supra*, and the others above cited is apparent. In *Perkins*, the tax was properly levied in the first instance, and was, therefore, not refundable. A taxable event had occurred upon which the tax was lawfully imposed. In the subsequent cases cited, no taxable event had occurred, and the tax was improperly exacted. In such a case, the taxpayer may recover the tax so paid in an action for that purpose.

Applying the rule to the present case, if the giving of a lease containing an option to purchase were properly a taxable event, then the tax could be imposed upon the transaction prior to the exercise of the option. The lessor could not thereafter obtain a refund of the money so paid even though the option was never exercised and no sale ever occurred. Although he never received the purchase

price, nor even acquired a contract right to that sum, appellant, if denied the mandatory relief prayed for, will be compelled to pay a nonrefundable tax ($5,280) computed on the price for which the optionee can, but may never, purchase the property if he shall choose to do so prior to April 1, 1972.

In my view, the imposition of an excise tax in such circumstances would be inequitable per se, and should not be permitted in the case of a lease with an option to purchase unless and until the option is exercised.

This case is before us on an agreed statement of facts. There is nothing in the statement to suggest that the lessor and the lessees were not acting entirely in good faith in negotiating the executing of the lease with the option to purchase. It is not contended by the county that there was any attempt to fix the option price at other than the fair value of real estate involved.

Since I am of the opinion that, as applied to the agreed facts in this case, RCW 28.45 is violative of article 2, section 19, with respect to the title of Laws of 1951, 1st Ex. Ses., ch. 11, and for the reasons stated above, the county is attempting to exact a tax which is not yet due, and hence denies appellant due process and equal protection of the law, I concur in the result of the majority opinion.

I would reverse the trial court's judgment of dismissal and remand the case with directions to grant appellant's application for a writ of mandamus, unless, meanwhile, the lessees elect to exercise their option.

WEAVER and ROSELLINI, JJ., concur with HILL, J.