No. 122,804

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Appeal of
CAPITAL ELECTRIC LINE BUILDERS, INC.,
from an order of the
Division of Taxation on Assessment of Retailers' Sales Tax.

SYLLABUS BY THE COURT

1.

The Kansas Retailers' Sales Tax Act, K.S.A. 79-3601 et seq., does not exempt equipment rental expenses incurred to perform taxable services from taxation.

2.

Equipment rental expenses which are necessary to perform taxable services are materially different from hotel and meal expenses incurred by employees who perform the taxable services. As such, equipment rental expenses are not tax exempt under *In re Tax Appeal of Cessna Employees Credit Union*, 47 Kan. App. 2d 275, 277 P.3d 1157 (2012).

Appeal from Kansas Board of Tax Appeals. Opinion filed May 6, 2022. Affirmed.

*S. Lucky DeFries* and *Jeffrey A. Wietharn*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, for appellant.

*Jay D. Befort*, general counsel, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before WARNER, P.J., CLINE, J., and RACHEL L. PICKERING, District Judge, assigned.

CLINE, J.: After an audit, the Kansas Department of Revenue (Department) assessed Capital Electric Line Builders, Inc. for unpaid retailers' sales tax along with associated penalties and interest. The Department claimed Capital Electric should have charged its customers sales tax on rental equipment charges Capital Electric passed through to those customers. Capital Electric appealed to the Board of Tax Appeals (BOTA), who upheld the assessment.

Capital Electric asks us to expand this court's ruling in *In re Tax Appeal of Cessna Employees Credit Union*, 47 Kan. App. 2d 275, 277 P.3d 1157 (2012), and find such rental equipment charges are not subject to sales tax. We decline to do so because the Kansas Retailers' Sales Tax Act, K.S.A. 79-3601 et seq., does not exempt such charges from taxation. Further, the rental equipment charges are materially different from the travel expenses in *Cessna.* BOTA correctly found the rental equipment charges were taxable, so we affirm its decision to uphold the assessment.

*Capital Electric's assessment for unpaid sales tax*

Capital Electric contracts with various customers to perform construction, maintenance, and emergency repairs on those customers' powerlines, which are taxable services under the Kansas Retailers' Sales Tax Act, K.S.A. 79-3601 et seq. Specifically, K.S.A. 2020 Supp. 79-3603 imposes a retailers' sales tax on the gross receipts from enumerated taxable services. The tax is imposed on the consumer (here, Capital Electric's customers) but collected by the seller (Capital Electric). See K.S.A. 79-3604. The tax is calculated on the "gross receipts" the seller received for a taxable sale or service. K.S.A. 2020 Supp. 79-3603. The Act defines "gross receipts" as "the total selling price or the amount received as defined in this act, in money, credits, property or other consideration valued in money from sales at retail within this state." K.S.A. 79-3602(o). And it defines "selling price" as:

2

"(ll)(1) 'Sales or selling price' applies to the measure subject to sales tax and means the total amount of consideration, including cash, credit, property and services, for which personal property or services are sold, leased or rented, valued in money, whether received in money or otherwise, without any deduction for the following:

. . . .

(B) [T]he cost of materials used, labor or service cost, interest, losses, all costs of transportation to the seller, all taxes imposed on the seller and any other expense of the seller;

(C) charges by the seller for any services necessary to complete the sale, other than delivery and installation charges . . . ." K.S.A. 79-3602(ll)(1)(B)-(C).

Capital Electric billed its customers per scheduled hourly labor rates for work its employees performed under the contracts at issue. Presumably, these labor rates (which included rates for straight time, time-and-a-half, and double time for various categories of workers) included Capital Electric's labor burden (i.e., payroll taxes and employee benefit costs associated with employees within each category). Capital Electric also billed its customers for equipment it owned and used in performing the work per scheduled rates incorporated into these contracts. As for equipment necessary to perform the contract services which Capital Electric did not own, Capital Electric passed associated rental charges (including taxes it paid on those rental charges) through to its customers. Capital Electric also passed through hotel and meal expenses for its employees to its customers. Under Capital Electric's contract, it billed the hotel and meal expenses at cost but billed charges for rental equipment at cost plus 10%.

Capital Electric included both its hourly owned equipment charges and hourly labor rates in its gross receipts when calculating sales tax owed by its customers. But it only included its 10% mark-up charge on equipment rentals in those gross receipts and thus only collected and remitted sales tax on that 10% markup. It did not collect sales tax on the hotel and meal expenses. Capital Electric separately itemized the equipment rental

3

charges and hotel and meal expenses. Its contracts did not discuss special tax treatment for any of these charges.

The Department audited Capital Electric's transactions between March 1, 2011, and August 31, 2013. The Department assessed Capital Electric for uncollected retailers' sales tax on the rental equipment charges, a penalty, and interest on the uncollected sales tax. The Department also assessed Capital Electric for uncollected retailers' sales tax on its employees' hotel and meal expenses. After Capital Electric reminded the Department that under *In re Tax Appeal of Cessna Employees Credit Union*, 47 Kan. App. 2d 275, such travel expenses are not subject to retailers' sales tax, the Department removed those expenses. Once the Department removed the travel expenses, the adjusted assessment totaled $106,606.

Capital Electric appealed the assessment to BOTA and both parties moved for summary judgment. BOTA granted the Department's motion, upholding the Department's assessment, and denied Capital Electric's motion. BOTA found Capital Electric incurred the rental expenses to perform taxable services to its customers, so the rental expenses should have been included in Capital Electric's gross receipts and taxed. Indeed, BOTA noted Capital Electric "could not have performed the taxable services if it did not rent the equipment necessary to perform the services." BOTA explained its decision as follows (calling Capital Electric "CELB"):

> "Nothing in the [Kansas Retailers' Sales Tax] Act allows a seller to invoice its purchasers for the seller's expenses (including sales tax imposed on the seller) incurred to perform necessary services and then itemize the expenses upon which the seller paid taxes and claim the expenses are 'reimbursed:' therefore, removable from the seller's taxable gross receipts. There is no use of the word 'reimbursement' in the Act.
> "These expenses, whether incurred by sellers of tangible personal property or sellers of taxable services, that are passed through to the sellers' purchasers are included

4

in the seller's taxable gross receipts. The gross receipts sales tax is a tax on overhead and all other expenses passed through to the purchaser.

"Taxable service contracts may or may not include the sale of tangible personal property upon which title passes. The service contracts pass services to the purchaser; however, in both types of taxable sales the taxable gross receipts include all expenses of the seller and all taxes imposed on the seller if the seller includes in its invoice to its purchaser these expenses and taxes.

"In the instant action, the sales tax was legally and directly imposed only once on CELB when CELB rented equipment; then, in a separate and distinct taxable services sale, CELB passed through the Equipment Rental Expenses, and increased the Expenses by 10% as part of the expenses CELB incurred to perform the taxable services CELB agreed to perform for its service purchasers.

"No double taxation occurred. 'Where there are two separate taxpayers and two separate sales transactions, even though a single subject matter is involved, any taint of double taxation is removed.' *Boise Bowling Center v. State*, 93 Idaho 367, 370, 461 P.2d 262 (1969); *Lakewood Lanes, Inc. v. State*, 61 Wash. 2d 751, 380 P.2d 466 (1963); *Gandy v. State*, 57 Wash. 2d 690, 359 P.2d 302 (1961); *Waterbury Motor Lease, Inc. v. Tax Commissioner*, 174 Conn. 51, 381 A.2d 552 (1977).

"Additionally, in [*In re Tax Appeal of* ]*Atchison Cablevision*, 262 Kan. []223, [936 P.2d 721 (1997),] the court, quoting the Board of Tax Appeals, stated:  'Under the plain language of the statute, sales tax is to be levied upon the gross receipts from . . . services. Gross receipts is defined as the total selling price which means the total cost to the consumer. . . .'

"CELB admits it was required in its Contracts with its purchasers to provide CELB owned equipment and rented equipment, both necessary and used to perform services for its purchasers. The retailers' sales taxes CELB paid its seller to rent the equipment were taxes imposed legally and directly on CELB.

"The question is not whether CELB was double taxed. The question is whether the Equipment Rental Expenses, including the taxes, passed through to CELB's purchasers were 'consideration' paid by the purchasers to CELB to perform the taxable services and includable in CELB's taxable gross receipts pursuant to the Act's sales tax provisions.

5

"K.S.A. 79-3602(o) defines CELB's taxable 'gross receipts' as the total selling price or the amount received by the seller from its consumers minus an amount equal to returns and trade-ins:

"... **the total selling price or the amount received as defined in this act**, in money, credits, property or other consideration valued in money from sales at retail within this state; and embraced within the provisions of the act. The taxpayer, may take credit in the report of gross receipts for: (1) An amount equal to the selling price of property returned by the purchaser when the full sale price thereof, including the tax collected, is refunded in cash or by credit; and (2) an amount equal to the allowance given for the trade-in of property. (Emphasis added)

"The Act does not authorize any exclusion from CELB's taxable gross receipts for 'reimbursements' of the seller's out of pocket equipment rental expenses necessary to perform taxable services and taxes imposed thereon. The Act mandates that sales tax be collected by the CELB from its purchaser if CELB's expenses and taxes are passed through to its purchasers.

"K.S.A. 79-3602(ll)(1) states:

"Sales or selling price' applies to the measure subject to sales tax and means the total amount of consideration, including cash, credit, property and services, for which . . . services are sold, leased or rented, valued in money . . . without any deduction for the following:

. . . .

(B) the cost of materials used, labor or service cost, interest, losses, all costs of transportation to the seller, all taxes imposed on the seller and any other expense of the seller;

(C) charges by the seller for any services necessary to complete the sale

. . . .

"K.S.A. 79-3602(ll) does not authorize any deduction for 'reimbursements' of taxes imposed on the seller or any other expenses of the seller.

. . . .

"This provision clearly applies to the purchaser/consumer in each sales transaction. The taxes imposed on CELB as purchaser of the rented equipment were separately stated on the invoices the rental companies gave to CELB as purchaser; therefore, the sales taxes legally and directly imposed on CELB were excluded from the

6

rental companies' taxable gross receipts. Likewise, the taxes legally and directly imposed on CELB's purchasers of the taxable services were separately stated on the invoices CELB gave to its purchasers; therefore, the sales taxes legally and directly imposed on the CELB purchasers were excluded from CELB's taxable gross receipts.

"K.S.A. 79-3602(ll)(3)(C) removes from a seller's taxable gross receipts only the taxes legally and directly imposed on the seller's purchasers/consumers if the taxes are separately stated on the invoice, bill of lading, etc. given to the consumer/purchaser. Furthermore, the [Department]'s publication KS-1525, entitled '*Sales & Use Tax for Contractors, Subcontractors, and Repairmen*,' on page 18, provides:

"[Y]our profit (including the markup of materials) and overhead costs are figured into the total charged the customer and are therefore subject to sales tax. A contractor may not deduct overhead expenses when figuring the taxable amount of the labor services portion of any contract. Nondeductible overhead items include . . . rental or lease payments . . . for equipment . . . .

"In the instant action, CELB admits the equipment was rented because it did not own the equipment necessary to perform the taxable services. The Act does not provide that the expenses of the seller, including taxes imposed on the seller, can be 'reimbursed' and removed from the taxable gross receipts. If this were the interpretation of the statute, then all expense of the seller, if reimbursed by the purchaser of the taxable services, could be removed from the taxable gross receipts and only the seller's profits would be taxable.

"To interpret the Act to allow sellers to exclude from taxable gross receipts all expenses upon which the seller has paid sales tax such as, heating, cooling, lighting, owned trucks and equipment expenses, and only include in taxable gross receipts the increase to such expenses would require the Board to 'disregard manifest legislative intent appearing in the plain and unambiguous language of the statute' and to 'add what is not easily found therein or to remove what ordinary language would include. *J.G. Masonry*[, *Inc. v. Department of Revenue*], 235 Kan. [497,] 500[, 680 P.2d 291 (1984),] and *National Cooperative Refinery* [*Ass'n v. Board of McPherson County Comm'rs*], 228 Kan. [595,] 597[, 618 P.2d 1176 (1980)]. See also, [*In re Tax Appeal of* ]*Atchison Cablevision*[, 262 Kan.] at 228. This interpretation would result in an 'unreasonable construction' and render meaningless the definition of taxable gross receipts specifically

7

included in K.S.A. 79-3602(ll)(1). See [*In re Tax Appeals of* ]*Genesis Health Clubs*, 42 Kan. App. 2d [239,] 242[, 210 P.3d 663 (2009)].

"CELB's contractual obligation to rent and operate the equipment to perform necessary services for its purchasers was 'consideration' as defined in K.S.A. 79-3602(ll)(1) and the rental equipment expenses, including the taxes imposed on CELB, are includable in CELB's taxable gross receipts."

*Capital Electric's appeal*

Capital Electric petitioned us for judicial review of BOTA's order under the Kansas Judicial Review Act (KJRA). Although it seeks relief under three subsections of the KJRA—K.S.A. 77-621(c)(3) ("the agency has not decided an issue requiring resolution"), K.S.A. 77-621(c)(4) ("the agency has erroneously interpreted or applied the law"), and K.S.A. 77-621(c)(8) ("the agency action is otherwise unreasonable, arbitrary or capricious")—all its arguments relate to BOTA's failure to apply *In re Tax Appeal of Cessna Employees Credit Union.* In *Cessna*, another panel of this court found travel expenses incurred by a seller's employees and passed through to the customer were not taxable. Capital Electric claims *Cessna* is dispositive and BOTA should have expanded its ruling to include the equipment rental charges at issue. By failing to expand *Cessna*, Capital Electric asserts BOTA erroneously interpreted or applied the law and "avoided the central question presented to it for resolution," so "Capital Electric is entitled to relief from BOTA's final order under K.S.A. 77-621(c)(3) and/or [(c)](4)." It also claims BOTA acted unreasonably when it treated the rental equipment charges differently than the travel expenses in *Cessna*. We disagree for reasons explained below.

In re Tax Appeal of Cessna Employees Credit Union *decision*

In *In re Tax Appeal of Cessna Employees Credit Union*, Cessna Employees Credit Union (CECU) appealed from a Kansas Court of Tax Appeals' (COTA) order denying its claim to refund some of the retailers' sales tax it paid to Jack Henry and Associates

(JHA). 47 Kan. App. 2d at 276-78. JHA sold computer upgrade goods and services to CECU. JHA invoiced CECU for the services, hardware, and software. And JHA separately invoiced CECU for JHA's travel purchases—which were for "JHA employees' transportation, meals, and lodging." 47 Kan. App. 2d at 276. JHA's travel purchases were necessary for JHA to complete its contractual obligations to CECU.

JHA's invoices to CECU for JHA's travel expense reimbursement included: (1) JHA's employees' travel expenses, (2) the sales tax JHA originally paid on those travel expenses, and (3) another tax on the total of JHA's travel expenses and the tax JHA paid, imposed under the Kansas retailers' sales tax. JHA separately stated the cost of each travel purchase. After CECU paid the invoices, it requested a refund of the retailers' sales tax it paid to JHA on JHA's travel expenses. The Department denied CECU's refund claim, and CECU appealed to the Secretary of Revenue. The Secretary upheld the denial, and CECU appealed to COTA.

COTA denied CECU's claim, concluding JHA's travel expense reimbursement was subject to Kansas retailers' sales tax as part of JHA's "gross receipts" in the transaction. It found the expense reimbursement was "'part of the total amount of consideration given by CECU in the transaction for which the taxable goods and services were sold by JHA.'" 47 Kan. App. 2d at 277-78.

On appeal, a panel of this court reversed COTA's decision. 47 Kan. App. 2d at 284. To reach this conclusion, the panel focused on the Act's definitions of "gross receipts" and "total selling price." Based on these definitions, the panel concluded the real question was whether JHA's travel expense reimbursement was either: (1) "part of the consideration 'from [JHA's] sale at retail' of computer upgrade goods and services"; or (2) "part of the consideration 'for which [such] property or services [were] sold.'" 47 Kan. App. 2d at 281. Answering this question, the panel held:

9

"We conclude they were not [part of the consideration] because they were not in any way sold at retail, nor were they a part of the sale of goods and services, nor were they part of the selling price of the goods and services. They were, in fact, merely a reimbursement of an associated cost incurred by the seller. The Division [of Taxation] stipulated that these costs were 'reimbursed' rather than sold, were invoiced separately, and were consumed by JHA, *not* by CECU." 47 Kan. App. 2d at 281.

The panel specifically limited its holding "to those circumstances where a goods or services contract makes provision for reimbursement of travel expenses consumed by, taxable to, and taxes paid by the seller, with those expenses separately invoiced to the party reimbursing same." 47 Kan. App. 2d at 283-84.

In re Tax Appeal of Cessna Employees Credit Union *is distinguishable*.

Capital Electric argues that, like in *In re Tax Appeal of Cessna Employees Credit Union*, "the third-party rentals at issue were for use and consumption by the vendor, Capital Electric, not for resale to the vendor's service customers," and the equipment rental companies collected the sales tax on those rentals from Capital Electric, as the ultimate consumer. According to Capital Electric, it did not have to collect that tax a second time from its service customers. But even though the equipment rentals were not for "resale," they were used to perform the very services for which Capital Electric charged its customers. It is that service transaction—between Capital Electric and its customers—which the Act treats as a separate taxable transaction from the transaction between Capital Electric and the equipment rental companies. On the other hand, JHA's employees' meals and lodging were not used to perform their computer upgrade services, so they did not add value to the service transaction in *Cessna*.

Capital Electric claims taxing the equipment charges constitutes unfair "double taxation," because it paid taxes on the rental equipment charges. But K.S.A. 79-3602(ll)(1) specifically prohibits deducting "all taxes imposed on the seller and any other

expense of the seller" as well as "charges by the seller for any services necessary to complete the sale . . . ." from the sales or selling price. K.S.A. 79-3602(ll)(1)(B), (ll)(1)(C). By the Act's plain language, Capital Electric cannot deduct its equipment rental charges (or any taxes imposed on it in those rental transactions) from the price of the services it provided its customers.

In focusing its appeal solely on expanding *Cessna*, Capital Electric gets tunnel vision. It not only loses sight of the statutory language at issue, but it fails to consider how it treated other charges in the transactions. For example, Capital Electric presumably included its employees' payroll taxes in its labor charges, which are then taxed as part of the gross receipts. It offers no reason why those payroll taxes should be treated differently than the taxes it paid on the equipment rental charges. And, presumably, its hourly equipment charges consider personal property taxes and other costs associated with owning that equipment, yet it also fails to explain why its owned equipment charges should be treated differently from its rental equipment charges.

Capital Electric also argues that "[l]ike in *Cessna*, the reimbursed rental expenses here were not 'in any way sold at retail, nor were they part of the sale of goods and services, nor were they part of the selling price of the goods and services. They were, in fact, merely a reimbursement of an associated cost incurred by the seller.'" While Capital Electric structured its invoices to treat the rental expenses as a reimbursement, that treatment doesn't change the character of the charge. Unlike *Cessna*, where the travel expenses were not a part of the ultimate sale of computer goods and services, the rental equipment here was very much a part of the ultimate sale of Capital Electric's construction, maintenance, and repair services to its customers' utility lines. See K.A.R. 92-19-55b(g)(1).

Just like the equipment it owned, Capital Electric could not have performed its contracted services without renting the equipment for its employees to use in performing

11

the services. Cf. *In re Tax Appeal of Cessna Employees Credit Union*, 47 Kan. App. 2d at 281 (concluding travel expenses were not part of the sale of goods and services). Capital Electric charged sales tax on its hourly charges for use of its own equipment. It offers no persuasive reason why rental equipment charges for equipment that was just as necessary to perform the contracted services should be treated any differently.

*Publication KS-1525—"Sales & Use Tax for Contractors, Subcontractors & Repairmen"*

In support of its final argument that the Department's assessment and BOTA's decision arbitrarily disregard the law, Capital Electric points to a Department-promulgated Publication—KS-1525, *Sales & Use Tax for Contractors, Subcontractors & Repairmen*, revised January 2014. Capital Electric string cites four passages from different sections of this publication, asserting they support its argument that the Department's assessment and BOTA's decision constitute unfair "double taxation." But the main problem with Capital Electric's position is it quotes the publication out of context, and it ignores the very section that addresses the situation here—rental of equipment used by an operator to perform contract services.

First, Capital Electric quotes two passages from the "Tools" section of the publication, which specifies that contractors pay the sales tax on the tools and materials used on the project, including rented tools. But rental equipment is at issue, not tools or materials. And directly following the "Tools" section is a section entitled "Machinery and Equipment." This section specifically addresses the situation here:

> "The lease or rental of equipment <u>with an operator</u> is not considered to be a lease/rental of tangible personal property (taxable), but providing a service. Whether or not the service is taxable depends on the rules for labor services . . . . The rental would be taxable if the service being performed by the equipment/operator is a taxable service."

12

Capital Electric never mentions this section in its brief.

This language from the pertinent section of the publication also answers Capital Electric's next argument, in which it quotes another section of the publication that states: "'Sales tax is to be paid on an item or taxable service only ONCE—by the final user or consumer.'" Once again, the Act treats Capital Electric's transaction with the equipment renter (in which it rented equipment) separately from its transactions with its customers (in which it used rental equipment to perform contracted services). Under the Act, Capital Electric is the consumer in the equipment rental transaction, and its customers are the consumers in the service contract transaction.

Finally, Capital Electric references a quote from the billing section of the publication: "As a contractor you do not charge your customers sales tax on the total amount of the contract. It is not lawful to charge tax on the tax you have already paid." But this section discusses the billing method in which contractors charge sales tax on their taxable labor services contracts by billing the customer for the contract price on the taxable labor services and separately stating the sales tax. The quoted language means that when using this billing method, the tax is charged only on the labor services portion of the contract, not the total contract amount, because tax-paid materials (not "equipment") and subcontractor costs should not be taxed—as these costs are not included in the gross receipts for construction contracts. This section does not address the question before BOTA or this court.

*Conclusion*

BOTA's conclusion that the rental charges and tax Capital Electric paid on those charges are includable in Capital Electric's gross receipts is supported by the plain language of the Act. See K.S.A. 79-3602(o); K.S.A. 79-3602(ll)(1)(B)-(C). Capital Electric raises tax policy concerns that only the Legislature is qualified to address.

13

BOTA correctly found the Act requires that any cost of doing business a seller recovers from its customers must be part of the tax base of its retail charges, unless specifically exempt. There is no exemption for rental equipment charges or associated taxes in the Act. While the Department correctly reversed course in removing the travel expenses from its assessment under *Cessna*, *Cessna* does not cover rental equipment charges. And the *Cessna* court expressly limited its holding to travel expenses. We see no reason to disobey that directive.

Affirmed.