475 P.2d 779

RUST TRACTOR CO., a Delaware corporation, and Rust Tractor of New Mexico, Inc., a New Mexico corporation, Appellants,

v.

BUREAU OF REVENUE, State of New Mexico, and Franklin Jones, Commissioner of Revenue, Appellees.

No. 471.

Court of Appeals of New Mexico.

Sept. 11, 1970.

Certiorari Denied Oct. 15, 1970.

Robert C. Poole, Poole, Tinnin & Danfelser, Albuquerque, for appellants.

James A. Maloney, Atty. Gen., Santa Fe, Richard J. Smith, Asst. Atty. Gen, John C. Cook, Sp. Asst. Atty. Gen., for appellees.

## OPINION

SPIESS, Chief Judge.

Appeal is taken from a decision and order of the Commissioner of Revenue pursuant to § 72–13–39, N.M.S.A.1953 (Repl. Vol. 10, Supp.1969).

The appeal presents these questions: First, did the Commissioner properly impose a deficiency assessment at a 3% rate upon Taxpayer's receipts from transactions evidenced by written contracts denominated "lease agreement" involving non-registered vehicles as against a contention that the transactions were installment sales agreements and the receipts taxable as to the particular equipment at 1½% rate (at which rate tax had been paid)? We hold against the Commissioner on this question.

Second, did the Commissioner properly impose a compensating (use) tax upon Taxpayer's equipment which was rented or leased under agreements conceded to be leases as against contentions (a) that Taxpayer having paid gross receipts tax upon rentals received, the imposition of compensating tax resulted in double taxation upon an identical transaction, and (b) that the imposition of the compensating tax under the circumstances is violative of Section 1 of Article VIII of the New Mexico Constitution? We affirm the Commissioner on this question.

The assessments which were imposed covered the period January 1, 1964 to September 30, 1967.

All facts before the Commissioner and relating to both questions were stipulated. Accordingly, if but one inference can reasonably be drawn from the stipulated facts a question of law is presented and a finding of the Commissioner to the contrary is not binding on the reviewing court. If, however, more than one inference can reasonably be drawn then the finding of the Commissioner is conclusive. Northwest Bancorporation v. Board of Governors, Etc., 303 F.2d 832 (8th Cir. 1962); Pabst v. Wisconsin Department of Taxation, 19 Wis.2d 313, 120 N.W.2d 77

(1963); 4 Davis, Administrative, Law Treatise § 29.05 (1958).

The questions presented will be disposed of in the order stated. The appeal is prosecuted by Rust Tractor Company, a Delaware corporation, and Rust Tractor of New Mexico, Inc., a New Mexico corporation, which is a wholly owned subsidiary of Rust Tractor Company. The questions affect both corporations alike and for the purpose of this opinion they are treated as a single taxpayer and referred to as "Rust." Rust is an authorized dealer for Caterpillar Company equipment and engaged solely in the sale, leasing and rental of heavy earthmoving and construction equipment and the supply of parts and service in connection with the maintenance and repair of such equipment.

It appears to be conceded, and we think properly so, that the facts stipulated by the parties present the issues involved here as questions of law, hence reviewable by this court.

The following are the stipulated facts material to a consideration of the first question. Rust entered into a number of transactions with customers involving heavy equipment. These transactions are referred to in the stipulation as "lease purchase" or "paid out lease" transactions. A copy of the form of agreement so employed is attached to and made a part of the stipulation. By oral or letter agreement made simultaneously with the execution of the form, it was agreed that upon compliance with the terms of the lease form the customer would automatically, and without additional consideration, become the owner of the equipment described and referred to in the form agreement.

With the exception of the oral or letter agreement the terms of the transactions were governed by the terms of the form agreement. Except in the event of customer's default in the performance of the obligations under the lease, Rust had no right to retake, control or use the equipment in any way at the end of the term. The customer could not terminate the lease ex-

cept by making all payments provided for in the lease. The total amount of payments provided for in the lease was determined by Rust's customary retail price for the equipment plus an additional charge computed on the basis of a percentage of the retail price per year over the term of the lease. The additional charge was computed in the same manner as that used by Rust in computing interest in connection with installment sales under sales and security agreement forms.

The equipment, the subject of the lease form, was not carried as an asset on Rust's books while subject to the lease. The investment tax credit was made available only to the customer and the equipment was not depreciated by Rust on their books at any time. Rust booked all the transactions initially as sales taking into income the excess of the total lease payments over the cost of the equipment and treated them as sales for all accounting and bookkeeping purposes. The total amount of payments to be made under the lease form was treated as receivables on Rust's books and the additional charge was treated as unearned income with amounts transferred to income as payments were received.

Rust treated their interest under the lease form agreements as evidencing a sale with the reservation of a security interest, within the contemplation of the Uniform Commercial Code. The parties have stipulated that the vehicles forming the subject matter of the form agreements are not such as require registration under the Motor Vehicle Code. Rust did make returns and paid gross receipt taxes at the rate specified for transactions covering vehicles not registered under the Motor Vehicle Code in accordance with § 72–16–4.5, N.M.S.A.1953 (Repl.Vol. 10, Supp.1963), and § 72–16A–14(N), N.M.S.A.1953 (Repl.Vol. 10, Supp. 1967). The Bureau, as has been stated, imposed a 3% rate and a 1% rate as to the municipal tax.

The parties are in substantial agreement that if the receipts are from the sale of the vehicles as distinguished from rentals un-

der a pure lease that the deduction provided by § 72–16–4.5, supra, and § 72–16A–14(N), supra, are applicable and the deficiency assessment should be abated. Otherwise the amount of the deficiency assessment is owing.

As we have stated, the terms of the lease agreement are not in dispute. The issue between parties is as to its legal effect, which, in our view, is to be determined under the framework of the Uniform Commercial Code. Section 50A–9–102, N.M. S.A.1953 (Uniform Commercial Code—Secured Transactions) applies " * * * to any transaction (regardless of its form) which is intended to create a security interest in personal property * * *." This Article (Article 9, Secured Transactions) " * * * applies to security interests created by contract including * * * lease or consignment intended as security."

Section 50A–1–201(37) of the Uniform Commercial Code defines the term security interest and provides:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. * * * Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration * * * does make the lease one intended for security."

The terms of the agreement are clear and unambiguous, consequently the intent of the parties must be ascertained from the language used. Brown v. American Bank of Commerce, 79 N.M. 222, 441 P.2d 751 (1968). The agreement provides that upon full payment of the rentals the lessee will become the owner of the property with no other or further consideration. This provision introduces an element under which an equity interest in

the property is being created in the lessee through the payment of rentals. In accordance with the undisputed facts and the language of the agreements the parties are deemed as a matter of law to have intended the lease as one creating a security interest within the meaning of the Uniform Commercial Code. See Transamerica Leasing Corporation v. Bureau of Revenue, 80 N.M. 48, 450 P.2d 934 (Ct.App.1969).

It is our opinion that the so-called "lease purchase" or "paid out lease transaction" created a security interest in the equipment. Receipts by Rust were from the sale of the equipment rendering § 72-16-4.5, supra, and § 72-16A-14(N), supra, applicable with the result that the deficiency assessment made by the Commissioner should be cancelled and abated.

The second question, to which we have referred, is presented by Rust through two points to which specific reference will hereinafter be made. The Commissioner imposed assessments in various amounts and for stated periods as compensating or use tax. The equipment covered by the assessments was equipment which had been out on lease or rental at some time during the assessment period and which remained unsold in Rust's inventory at the end of such period. This equipment was held for sale in Rust's inventory in the ordinary course of its business at all times when it was not out on lease or rental.

It was Rust's general practice to apply all rentals toward the purchase price where the customer wished to purchase equipment which had been rented to him without regard to whether the customer had an option to purchase the equipment. The equipment covered by the compensating tax assessments was never capitalized or depreciated on Rust's books but was treated as inventory for all purposes. On all of the leasing or renting transactions involved Rust paid gross receipts tax on the total lease or rental receipts derived from the transaction at a 3% rate and, where applicable, municipal sales tax at a 1% rate. The compensating tax assessments imposed by

the Commissioner were based upon 1½% of the original invoice cost of equipment in conformity with the statutory rate.

Rust's contention under his point two has been summarized as follows:

"The question presented is whether both a gross receipts tax and a compensating tax may be imposed on a retail equipment dealer as a result of the identical transaction."

Rust takes the position that such taxation, which is termed "double taxation," is not permissible under either the Compensating Tax Act of 1939, as amended, or the Gross Receipts and Compensating Tax Act of 1966, and is contrary to the legislative intent in the enactment of these laws. No specific language contained in the legislative acts is called to our attention, nor have we found any indicating that such taxation is not within the legislative scheme. Compare Edmunds v. Bureau of Revenue, 64 N.M. 454, 330 P.2d 131 (1958).

In our opinion the gross receipts tax and compensating tax were not in this instance imposed upon a single transaction as Rust contends but upon different taxable incidents; namely, (1) the use of property in this state, such use being leasing or renting it to others (compensating or use tax), and (2) the receipts derived from the payment of rental by those to whom the property was leased (gross receipts or sales tax).

We do note that the equipment covered by the compensating tax assessments was equipment which had been leased during the particular assessment period and which had remained unsold in Rust's inventory at the end of the period. Rust actually used the property during the period for the purpose of renting or leasing it and derived revenue through such use. Renting or leasing is a "use" of property within the definitions contained in the compensating tax acts [§ 72-17-2, N.M.S.A.1953, and § 72-16A-3, N.M.S.A.1953 (Repl.Vol. 10, Supp.1967)]. This use, as stated, is the incident upon which the compensating tax was imposed [§ 72-17-3, N.M.S.A.1953

(Repl.Vol. 10, Supp.1963) ; § 72–16A–7, N. M.S.A.1953 · (Repl.Vol. 10, Supp.1967)].

The receipt of money from the leasing of the property is the incident which gave rise to the imposition of the gross receipts and sales tax [§ 72–16–4.5, N.M.S.A.1953 (Repl. Vol. 10, Supp.1963) ; § 72–16A–3, supra]. We were unable to find in the acts a legislative intent, express or implied, to exempt property from a compensating tax because the rentals are taxable as gross receipts.

It would appear to us that if personal property is sold in New Mexico by a New Mexico dealer to a New Mexico buyer who rents the property to others, the sale by the New Mexico dealer would be subject to the gross receipts tax although rentals received by the New Mexico buyer would also be subject to the gross receipts tax. Consequently, under like circumstances, a sale made by a non-resident dealer to a New Mexico resident, as in the present case, would fall within the language and purpose of the Compensating and Use Tax Acts. [§ 72–17–1, N.M.S.A.1953, and § 72–16A–7, supra.]

In support of its position Rust cites the following cases: Illinois Road Equipment Co. v. Department of Revenue, 32 Ill.2d 576, 207 N.E.2d 425 (1965) ; Herman M. Brown Company v. Johnson, 248 Iowa 1143, 82 N.W.2d 134 (1957) ; and Montgomery Aviation Corp. v. State, 275 Ala. 266, 154 So.2d 24 (1963).

The Illinois Road Equipment Company case is distinguishable on the ground that under the applicable Illinois statute the term "use," by definition, excluded use for demonstration. It was established that the equipment involved in the case was leased for demonstration purposes.

In Herman M. Brown Co. v. Johnson, the Iowa use tax had been imposed upon the property which was ultimately sold at retail and the sales tax paid to the state, which is not the situation here. Montgomery Aviation Corp. v. State involved an Alabama statute which was designed to impose a sales tax on the value of personal property which was withdrawn from the business or stock and used or consumed in connection with the business. The court declined to apply a sales tax to an airplane dealer's receipts from the rental of aircraft on the ground that the tax would be collected on the ultimate sale of the airplanes. The evidence was that the sale was at the fixed or original price, without regard being given to the prior use or consumption of the aircraft. A compensating or use tax was not involved.

The Alabama court appears to have been of the opinion that the statute did not permit the same tax to be levied twice upon the same property.

Authorities which tend to support the Commissioner are Boise Bowling Center v. State, 93 Idaho 367, 461 P.2d 262 (1969) ; Central Marine Service, Inc. v. Collector of Revenue, 162 So.2d 81 (La.App.1964), cert. denied, 246 La. 355, 164 So.2d 353 (1964) ; compare Beatty v. City of Santa Fe, 57 N.M. 759, 263 P.2d 697 (1953) ; Lakewood Lanes, Inc. v. State, 61 Wash. 2d 751, 380 P.2d 466 (1963) ; Gandy v. State, 57 Wash.2d 690, 359 P.2d 302 (1961).

■ Rust's final point is stated as follows:

"THE PROVISIONS OF THE COMPENSATING TAX ACT OF 1939, AS AMENDED, AND THE EMERGENCY SCHOOL TAX ACT OF 1935, AS AMENDED, AND THE PROVISIONS OF THE GROSS RECEIPTS AND COMPENSATING TAX ACT OF 1966, TO THE EXTENT THEY PERMIT IMPOSITION OF BOTH A GROSS RECEIPTS TAX AND A COMPENSATING TAX ON RUST AS THE RESULT OF AN IDENTICAL EQUIPMENT TRANSACTION, CONSTITUTE AN UNREASONABLE CLASSIFICATION FOR TAX PURPOSES, AND REPRESENT A DENIAL TO RUST OF EQUAL PROTECTION OF THE LAWS AND A VIOLATION OF THE EQUALITY AND UNIFORMITY PROVISION OF

SECTION 1 OF ARTICLE 8 OF THE NEW MEXICO CONSTITUTION."

In considering this contention we point to our conclusion, previously expressed, that the gross receipts tax and compensating tax were not imposed upon an identical equipment transaction.

It is stipulated that Rust acquires all or almost all of its new Caterpillar equipment by purchase directly from Caterpillar Tractor Company and that Rust may not lease equipment from Caterpillar for re-leasing to its customers. It was further stipulated that Rust competes "with other dealers or distributors of heavy construction and earth-moving equipment who lease their equipment from manufacturers or from finance institutions for the purpose of re-leasing equipment to their customers" and also competes "with manufacturers which lease their equipment directly to contractors."

The issue under this point is whether the legislative classification of taxable subjects is unreasonable; if not, the legislation is not violative of Article VIII, Section 1 of the New Mexico Constitution providing: "Taxes shall be equal and uniform upon subjects of taxation of the same class," or Article II, Section 18, which prohibits the denial of "equal protection of the laws" or the Fourteenth Amendment of the United States Constitution likewise prohibiting denial of equal protection of the laws. With respect to the application of these constitutional provisions to the exercise of taxing power the Supreme Court, in Gruschus v. Bureau of Revenue, 74 N. M. 775, 399 P.2d 105 (1965), said:

"* * * It is likewise well established that in the exercise of its taxing power, the State may select its subjects of taxation, and, so long as the tax is equal and uniform on all subjects of a class and the classifications for taxation are reasonable, such legislation does not offend these provisions of the State or Federal constitutions. * * *"

Further, and relating to the equal protection clause, the court said:

"* * * Equal protection does not prohibit classification for legislative purposes, provided that there is a rational and natural basis therefor, that it is based on a substantial difference between those to whom it does not apply, and that it is so framed as to embrace equally all who may be in like circumstances and situations. * * *"

In Michael J. Maloof & Co. v. Bureau of Revenue, 80 N.M. 485, 458 P.2d 89 (1969), the Supreme Court, in discussing classification in the scheme of taxation, said:

"In the field of taxation, more than in other fields, the legislature possesses the greatest freedom in classification, and to attack such as a violation of the Fourteenth Amendment places the burden on the one attacking to negative every conceivable basis which might support the classification. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940):

"Unless the classification is clearly arbitrary and capricious or void for uncertainty as in Safeway Stores, supra, [Safeway Stores v. Vigil, 40 N.M. 190, 57 P.2d 287 (1936)] we cannot substitute our views in selecting and classifying for those of the legislature. Romero v. Tilton, 78 N.M. 696, 437 P.2d 157 (Ct.App. 1967), cert. denied January 31, 1968. * * *"

To the same effect is Edmunds v. Bureau of Revenue, supra.

In accordance with the legislative scheme neither the gross receipts tax nor the compensating tax is payable under the law applicable to this appeal by one who leased property for sublease in this State. Such tax, however, is payable by one who has purchased property for lease in this State, thus the Legislature has made a distinction with respect to tax liability as between purchasers and bailees.

To our mind, there is a real substantial difference between those classes of persons who acquire title and ownership of property and those who acquire only the interest of a bailee under a lease agreement.

88

In our opinion, the classification is not arbitrary or capricious and does not warrant the conclusion that the legislation is subject to constitutional objection.

The decision and order of the Commissioner of Revenue is reversed insofar as it applied to the transactions referred to as "lease purchase" or "paid out lease transactions." Otherwise it is affirmed.

It is so ordered.

WOOD and HENDLEY, JJ., concur.